**Micki Ann RAMIE, Plaintiff-Appellee,**

v.

**CITY OF HEDWIG VILLAGE, TEXAS, et al., Defendants-Appellants.**

**No. 84–2323.**

United States Court of Appeals, Fifth Circuit.

July 15, 1985.

Rehearing and Rehearing En Banc Denied Aug. 19, 1985.

Arthur M. Glover, Jr., Jack McKinley, Houston, Tex., for defendants-appellants.

Sewell & Riggs, Barry Abrams, Houston, Tex., for Rush and White.

Robert B. Wallis, Clinard J. Hanby III, Houston, Tex., for plaintiff-appellee.

Before REAVLEY, JOHNSON and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

Micki Ann Ramie brought a civil rights action, 42 U.S.C. § 1983 (1982), against the City of Hedwig Village, Rex White, William Rush, and Jimmy Jones for violating her constitutional right to privacy. After the district court directed a verdict in favor of Jones, the jury awarded Ramie $122,000, and the district court awarded her $43,-607.85 for attorney's fees and costs, *see* 42 U.S.C. § 1988 (1982). The City, White, and Rush appeal. Holding that no constitutional right was violated, we reverse.

White, a sergeant on the City's police force, received a complaint from a citizen that a man dressed as a woman, representing himself as an undercover city police officer, had assaulted her son. White's investigation led him to Ramie. Ramie, a female, suffers from congenital adrenal hyperplasa, a condition that causes her to overproduce male hormones, giving her certain male secondary sex characteristics such as a deep voice and facial hair.

At the request of White, Ramie voluntarily appeared at the police headquarters for

questioning. What occurred during the questioning was hotly contested at trial. According to Ramie, the questioning lasted approximately an hour and fifteen minutes, during which White and Rush repeatedly questioned and harassed her about her gender, threatened to send her to the penitentiary if she did not admit she was a man and act and dress accordingly, and asked whether she believed in Jesus Christ. According to White and Rush, the questioning lasted about twenty minutes. During the interview, they questioned Ramie about her sex to determine her identity and inquired about her religious beliefs only after she had indicated that her present lifestyle bothered her. White and Rush, although with hindsight they confessed that they may have committed some indiscretions, denied that they threatened or harassed Ramie.

On appeal, the City, White, and Rush first argue that there was no evidence to support a finding that Ramie's constitutional right to privacy was violated.[1] Ramie argues that evidence of White and Rush questioning her about her gender and religious beliefs supported the jury's finding.

 The Constitution protects individuals against invasion of their privacy by the government. *See Whalen v. Roe,* 429 U.S. 589, 598–602, 97 S.Ct. 869, 876–78, 51 L.Ed.2d 64 (1977); *Fadjo v. Coon,* 633 F.2d 1172, 1175–77 (5th Cir.1981); *DuPlantier v. United States,* 606 F.2d 654, 669–71 (5th Cir.1979), *cert. denied,* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981); *Plante v. Gonzales,* 575 F.2d 1119, 1132 (5th Cir. 1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). The liberty interest in privacy encompasses two notions: the freedom from being required to disclose personal matters to the government and the freedom to make certain kinds of decisions without government interference. *Whalen,* 429 U.S. at 599–600,

97 S.Ct. at 876, 51 L.Ed.2d at 73. The disclosure strand of the privacy interest in turn includes the right to be free from the government disclosing private facts about its citizens and from the government inquiring into matters in which it does not have a legitimate and proper concern. *Id.* at 600–02, 97 S.Ct. at 877–78, 51 L.Ed.2d at 73. There was no evidence that either police officer or the City disclosed any information obtained during the questioning. Therefore, Ramie's claim is that the asking of the questions about her gender and religious beliefs constituted a violation of her constitutional right to privacy.

 To determine whether the questioning amounted to a violation of Ramie's right to privacy, this court must decide whether the invasion of privacy proved by Ramie outweighs the government's legitimate interests. *See id.,* 97 S.Ct. at 877–78, 51 L.Ed.2d at 74; *Fadjo,* 633 F.2d at 1176. In *McNally v. Pulitzer Publishing Co.,* 532 F.2d 69, 76–77 (8th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976), the court stated that the Constitution is violated only by invasions of privacy involving the most intimate aspects of human affairs. For example, in *Whalen,* 429 U.S. at 602, 97 S.Ct. at 878, 51 L.Ed.2d at 75, the Court held that requiring the disclosure of persons receiving medications to state health agencies did not amount to an impermissible invasion of privacy, especially where there is regular disclosure of similar information to doctors, hospital personnel, and public health agencies. Gender and religious beliefs are generally not such intimate matters and are subject to public exposure. Ramie's license, which she showed to White and Rush, indicated her gender. Furthermore, Ramie introduced evidence at trial that she regularly attended church. Weighed against this slight invasion of privacy stands the City's legit-

---

1. Ramie argues that White and Rush waived any claim of insufficiency of the evidence by failing to move for a directed verdict at the close of all the evidence. *See Wells v. Hico Indep. School Dist.,* 736 F.2d 243, 248–49 (5th Cir.1984), *petition for cert. filed,* 53 U.S.L.W.

3302 (U.S. October 23, 1984) (No. 84–545). The record clearly shows, however, that all defendants moved for a directed verdict on the grounds that there was no evidence of a constitutional violation.

imate interest in questioning persons suspected of committing crimes. Although in retrospect some question may be determined to be irrelevant and not within the government's proper sphere of concern, police officers must have the freedom at least to ask the questions they believe will aid them in the investigation. Because we hold that the government's interest in conducting criminal investigations outweighs any invasion of Ramie's privacy, Ramie failed to present evidence that her constitutional rights were violated.

An undercurrent running through this case, both at trial and on appeal, is that White's and Rush's *manner* in asking the questions violated her constitutional right to privacy. Ramie, however, cites no case to support the proposition that asking otherwise proper questions in an abusive and harassing manner amounts to an unconstitutional invasion of privacy. That abusive and harassing police questioning does not violate the constitutional right to privacy does not mean that persons so treated are without legal rights. Confessions obtained through coercive tactics are, of course, inadmissible. State tort remedies may also be available.

Because we hold that Ramie failed to prove that her constitutional right to privacy was invaded, we reverse and need not reach the remaining issues raised by the City, White, and Rush. Because there was considerable confusion at trial as to what is required to establish municipal liability under section 1983, however, we address that matter briefly.

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court held that local governments are liable under section 1983 where official policy or governmental custom is responsible for a deprivation of rights protected by the constitution. In *Bennett v. City of Slidell*, 728 F.2d 762, 770 (5th Cir.1984), *petition for cert. filed*, 53 U.S.L.W. 3419 (U.S. Dec. 4, 1984) (No. 84–797), this court noted that to establish liability based on the existence of a policy, *Monell* requires that the policy complained of must itself, as opposed to the way it is carried out by city employees, deprive a plaintiff of a constitutional right. *See, e.g., Monell*, 436 U.S. at 661–62, 98 S.Ct. at 2020–21, 56 L.Ed.2d at 617 (City of New York maintained policy which unconstitutionally compelled pregnant employees to take unpaid leaves of absence before required for medical reasons). The *Bennett* court also discussed municipal liability based on custom. The court stated that a section 1983 plaintiff could establish custom by proving that constitutionally objectionable behavior was sufficient in duration or frequency to the extent that it was acceded to by the maker of official policy. 728 F.2d at 766, 768.

■ The latest writing by the Supreme Court is *City of Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). The plurality opinion authored by Justice Rehnquist would require that the damaging incident be "caused by an existing, *unconstitutional* municipal policy...." —— U.S. at ——, 105 S.Ct. at 2436 (emphasis added). Justice Brennan expressed a different view of the causal connection required between municipal policy and the constitutional deprivation: "[A] plaintiff must prove, in the broad causal language of the statute, that a policy or custom of the city 'subjected' him, or 'caused him to be subjected' to the deprivation of constitutional rights." —— U.S. at ——, 105 S.Ct. at 2439. However, both opinions reject the contention that a single incident of police misbehavior can establish a municipal policy or custom. Any abusive aspect of the interrogation of Ramie would not, therefore, alone prove an objectionable city policy.

To establish the City's liability, Ramie proved only her own interrogation and elicited testimony from Jones, the police chief, that it was within the police force's policy to ask suspects their gender and that, although there was no policy on discussing religion with suspects, he saw nothing wrong with White and Rush bringing up the subject. Ramie also introduced evidence of a civil rights judgment rendered

against White for false imprisonment and cruel and unusual punishment.

■ Under *City of Oklahoma City* and *Monell,* the above evidence was insufficient to establish the City's liability. Assuming that the police chief was delegated policy-making authority, there was no policy or custom attributable to him that was at all objectionable. Isolated events are not sufficient to establish custom. The testimony of a city official might display a culpable attitude or an approval of unconstitutional conduct, but the testimony could not prove a policy by "ratification"—as has been argued here.

Because Ramie failed to introduce sufficient evidence to prove a violation of her right to privacy, the judgment is RE-VERSED.