Ann Q. THOMPSON, Plaintiff,

v.

CITY OF ARLINGTON, TEXAS,
et al., Defendants.

No. 4:93–CV–375–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

Nov. 17, 1993.

Lawrence J. McNamara, Jay C. Counts, Allan G. King, Johnson & Gibbs, Dallas, TX, for plaintiff.

Stephen Fred Fink, Thompson & Knight, Mark J. Dyer, Thomas Phillip Brandt, Fanning Harper & Martinson, Dallas, TX, George Foster Christie, Lee Foster Christie, Pope Hardwicke Christie Harrell & Kelly, Kent Royce Smith, Bettye S. Springer, Haynes & Boone, Fort Worth, TX, Patricia Hummel Seifert, Lori L. Bennett, Crouch & Hallett, Dallas, TX, for defendants.

## MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

Came on for consideration the motions of defendants, City of Arlington, Texas ("City"), George C. Campbell ("Campbell"), David M. Kunkle ("Kunkle"), David Pugh ("Pugh"), Robert E. Diaz ("Diaz"), and John O. Rucker ("Rucker"), to dismiss. The court, having considered the motions, the response of plaintiff, Ann Q. Thompson, the record and applicable authorities, makes the following determinations.

### I.

#### Plaintiff's Complaint

A. *Capacities of Defendants:*

On May 27, 1993, plaintiff filed her original complaint, naming as defendants City, which employs her in its police department, and individual employees of City. Campbell is the city manager, Kunkle is the police chief, Pugh is the deputy police chief, Rucker is a police lieutenant and co-worker, and Diaz is the assistant city attorney and police legal adviser. The individuals were first sued solely in their individual capacities. On June 14, 1993, plaintiff amended her complaint to assert her claims against the individuals in their official capacities as well.

### B. *Alleged Factual Bases of All Plaintiff's Claims:*

In paragraphs IV through XVI of her complaint, as amended, ("complaint") plaintiff alleges the factual bases of all her claims under the heading "Factual Allegations." Essentially, they are that:

Plaintiff has been employed by City as a police officer for approximately ten years. She has been suffering from depression for approximately two years, for which she sought both psychiatric and psychological counseling. Under the care of her doctors she managed to continue on the police force and to perform her duties satisfactorily. In October 1992, upon returning home from the funeral of a fellow police officer, she took a severe overdose of prescription drugs. She was hospitalized under the care of her psychiatrist and psychologist for approximately one month thereafter, during which time she was treated with drug therapy and counseling. When she was released from the hospital, she sought reinstatement to regular duty as a police officer. Before authorizing plaintiff to return to regular duty, *i.e.* to exhibit a badge, carry a gun, wear her police uniform, or engage in other regular police officer activities, the individual defendants required that she consent to the release to City of her mental health records. That requirement was made after plaintiff's doctors and a consulting psychologist employed by the City had advised City that plaintiff was fit for return to duty. After initially refusing to do so, plaintiff signed an authorization for the release of her records. Upon reviewing the records, the individual defendants determined that plaintiff should remain on restricted duty, performing clerical duties. Further, they required that, in order to be evaluated again, plaintiff would have to authorize release of all her mental health records, as they are created, and request her doctors to submit various reports to defendants. The monitoring by defendants of plaintiff's condition in the future would interfere with her ability to continue her health care treatment. She has refused to accede to the requests for future disclosures, with the result that she remains indefinitely on restricted duty.

The demands of City for plaintiff's health care records after City had received an opinion from the psychologist who had evaluated plaintiff for City, City's refusal to return her to full duty, and City's request for future information pertaining to plaintiff were all pursuant to a policy adopted and enforced by Campbell and Kunkle, who had final policy-making authority for City. That policy and the restrictions on her employment have been applied discriminatorily to plaintiff because of her sex and in retaliation for her protests to Kunkle regarding the demands made by the department for information concerning her mental health. The actions taken against plaintiff by the individual defendants were in bad faith; and, the actions of each of the individual defendants were knowing, calculated, malicious, and willful attempts to interfere with clearly established rights of privacy plaintiff has under the United States and Texas Constitutions.

### C. *Plaintiff's Theories of Recovery:*

Plaintiff asserts claims against defendants pursuant to 42 U.S.C. §§ 1983 and 1988 (First Cause of Action); art. 1, §§ 13 and 19 of the Texas Constitution (Second Cause of Action); the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117 (Third Cause of Action); the Civil Rights Act of 1991 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e to 2000e–17 (Fourth Cause of Action); the Texas Commission on Human Rights Act ("TCHRA"), Tex.Rev.Civ.Stat.Ann. art. 5221k (Fifth Cause of Action)[1]; the Texas Whistleblower Act, Tex.Rev.Civ.Stat.Ann. art. 6252–16a (Sixth Cause of Action); and, the Texas Medical Practice Act, Tex.Rev.Civ. Stat.Ann. art. 4495b, § 5.08, and the Texas Health and Safety Code Ann. § 611.005 (Sev-

---

1. Under the heading "FIFTH CAUSE OF ACTION—TEXAS COMMISSION ON HUMAN RIGHTS ACT (Art. 5221k, Tex.Rev.Civ.Stat.)" plaintiff states, in paragraph XXX of her first amended complaint, "The actions of sex discrimination by the individual Defendants violate Chapter 106 of the Texas Civil Practice & Remedies Code." Chapter 106, however, does not apply to employment discrimination claims, which are covered by the TCHRA. *See* Revisor's Note to Tex.Civ.Prac. & Rem.Code Ann. § 106.-003 (Vernon 1986).

enth Cause of Action). Also, she contends she was subjected to intentional infliction of emotional distress (Eighth Cause of Action) and invasion of privacy (Ninth Cause of Action).

## II.

### *Motions to Dismiss*

Each defendant has filed a motion to dismiss, asserting that plaintiff's allegations are insufficient to state any claim upon which relief can be granted.[2] Additionally, the individual defendants maintain that they are entitled to qualified and official immunity from suit. For the purposes of defendants' motions, the court accepts as true all well-pleaded allegations in the complaint, and views them in the light most favorable to plaintiff. *See Rankin v. City of Wichita Falls,* 762 F.2d 444, 446 (5th Cir.1985).

## III.

### *Dismissal of Claims Against Individual Defendants in Official Capacities*

█ Since the official capacity claims are in reality claims against City, the court will dismiss those claims as to the individual defendants. *See Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985); *Russell v. Edgewood Indep. Sch. Dist.,* 406 S.W.2d 249, 252 (Tex. Civ.App.—San Antonio 1966, writ ref'd n.r.e.).

## IV.

### *The Claims Under 42 U.S.C. §§ 1983 and 1988*

A. *Nature of Plaintiff's § 1983 Claim :* [3]

A person seeking to recover under § 1983 "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." [4] *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). The rights plaintiff claims were violated are described by her in paragraph XIX of her complaint as follows:

> XIX. The actions of Defendants, acting under color of state and local law, custom and usage, deprived Plaintiff of her rights, privileges, and immunities under the laws and Constitution of the United States, in particular her right of privacy. By these actions, Defendants have jointly and severally deprived Thompson of her rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. §§ 1983 and 1988. Section 1983 liability of the Defendants also is founded upon their violations of 42 U.S.C. §§ 1981A, 2000e— 2000e–17 and 12101—12117, as more fully set forth below.

Complaint at 7–8. She "more fully set[s] forth" in paragraphs XXIV through XXVIII of the complaint her contentions that her rights under 42 U.S.C. §§ 1981a and 2000e to 2000e–17 have been violated. In those paragraphs she maintains that defendants discriminated against her because of her sex, that actions taken against her were, in part, to retaliate against her because of her opposition to sex discrimination within the police department, and that defendants have retaliated against her by interfering with the free exercise of her religion, *i.e.* by not permitting her to schedule her duties so that she would be able to attend religious education and prayer activities on Fridays. Her theory of recovery under 42 U.S.C. §§ 12101–12117 is set forth in paragraphs XXII and XXIII of

---

**2.** The court is not accepting the invitation of certain defendants to treat the motions to dismiss as ones for summary judgment. *See, e.g.,* Brief in Support of George Campbell's Motion to Dismiss for Failure to State a Claim upon Which Relief Can be Granted at 1–2. Therefore, the court is not considering matters extraneous to the complaint. Of course, the court is considering inferences that necessarily flow from the pleaded facts.

**3.** The § 1988 claim is entirely dependent on the § 1983 claim; therefore, the § 1988 claim will not be discussed separately.

**4.** Each defendant clearly was acting under color of state law.

the complaint, where she asserts that defendants violated the ADA by refusing to return her to active duty and by "their establishment of terms and conditions that apply uniquely to her." Complaint at 8. She alleges that she is, or is considered to be, "disabled" within the meaning of the ADA and that she is a "qualified individual with a disability" as defined in the ADA. *Id.*

### B. *Basic Constitutional Right-of-Privacy Principles:*

The Supreme Court has recognized two different kinds of constitutionally protected privacy interests, one, a person's interest in avoiding disclosure of personal matters (the "confidentiality" branch of the right of privacy) and, the other, a person's interest in independence in making certain kinds of important decisions (the "autonomy" branch). *Whalen v. Roe,* 429 U.S. 589, 598–600, 97 S.Ct. 869, 876–77, 51 L.Ed.2d 64 (1977). The Fifth Circuit has expressly recognized both interests. *Ramie v. City of Hedwig Village, Texas,* 765 F.2d 490, 492 (5th Cir.1985); *Fadjo v. Coon,* 633 F.2d 1172, 1175 (5th Cir. Unit B Jan. 1981); *Plante v. Gonzales,* 575 F.2d 1119, 1127–28 (5th Cir.1978).

The autonomy branch, which has been referred to as the "decision making branch of the privacy right," relates to matters such as a marriage, procreation, contraception, family relationships, child rearing, and education. *See Fadjo,* 633 F.2d at 1175. The confidentiality branch, which has referred to as the "disclosure strand," "includes the right to be free from the government disclosing private facts about its citizens and from the government inquiring into matters in which it does not have a legitimate and proper concern." *Ramie,* 765 F.2d at 492.

When evaluating whether there has been an unconstitutional breach of confidentiality, "a balancing standard is appropriate as opposed to the compelling state interest analysis involved when autonomy of decisionmaking is at issue." *Fadjo,* 633 F.2d at 1176. *See also Woodland v. City of Houston,* 940 F.2d 134, 138 (5th Cir.1991). However, "[s]omething more than rationality must be demonstrated." *Plante,* 575 F.2d at 1134. In *Fadjo,* the Fifth Circuit said:

> An intrusion into the interest in avoiding disclosure of personal information will thus only be upheld when the government demonstrates a legitimate state interest which is found to outweigh the threat to the plaintiff's privacy interest.

633 F.2d at 1176. *See also Ramie,* 765 F.2d at 492–93. In *Ramie,* the plaintiff claimed that defendant violated her constitutional right of privacy when police officials questioned her, during an investigation, relative to her gender and religion. In the course of rejecting her contention, the Fifth Circuit explained:

> Although in retrospect some question may be determined to be irrelevant and not within the government's proper sphere of concern, police officers must have the freedom at least to ask the questions they believe will aid them in the investigation. Because we hold that the government's interest in conducting criminal investigations outweighs any invasion of Ramie's privacy, Ramie failed to present evidence that her constitutional rights were violated.

765 F.2d at 493. The balancing of the intrusion against the state interest is a legal function. *Woodland,* 940 F.2d at 138; *Plante,* 575 F.2d at 1137–38.

▮▮▮▮ A finding by a court that a governmental entity's breach of a person's privacy interest was unnecessary, in whole or in part, does not, standing alone, lead to the conclusion that the conduct was unconstitutional. *See Whalen,* 429 U.S. at 597, 97 S.Ct. at 875. Governmental authorities have broad latitude in experimenting with possible solutions to problems of vital local concern. *Id.* A rational attempt by a city "to deal with a problem properly subject to the municipality's control" that is "unnecessary in whole or in part in the Court's opinion would not make it unconstitutional." *McKenna v. Fargo,* 451 F.Supp. 1355, 1379–80 (D.N.J.1978).

▮▮▮▮ Nor does the mere fact that the breach of confidentiality is done in an excessive and abusive manner cause the breach to rise to the level of violation of a constitutional right. *Ramie,* 765 F.2d at 493. Similarly, the fact that an inquiry into the private affairs of a person goes further than is neces-

sary to deal with the evils sought to be avoided does not render the inquiry unconstitutional. *DuPlantier v. United States,* 606 F.2d 654, 671 (5th Cir.1979).

In a case involving a contention that records of a psychiatrist and hospitals were not disclosable to a grand jury, the Ninth Circuit made the following observations in reference to the right of privacy aspect of the contention:

> In *Whalen v. Roe,* 429 U.S. 589, 602, 97 S.Ct. 869, 877–78, 51 L.Ed.2d 64 (1977), the Supreme Court noted an individual possesses no reasonable expectation that his medical history will remain completely confidential. Modern medical practice requires multiple disclosures to doctors, hospital personnel, and often public health agencies. Patient charts, therefore, have a public aspect not protected by a right of privacy.

*In re Grand Jury Proceedings,* 867 F.2d 562, 565 (9th Cir.1989). In *Whalen,* the Supreme Court held:

> We hold that neither the immediate nor the threatened impact of the patient-identification requirements in the New York State Controlled Substances Act of 1972 on either the reputation or the independence of patients for whom Schedule II drugs are medically indicated is sufficient to constitute an invasion of any right or liberty protected by the Fourteenth Amendment.[ ]

429 U.S. at 603–04, 97 S.Ct. at 878 (footnote omitted).

■ However, there is authority that a governmental requirement of disclosure of information from, or created by, mental health care professionals sufficiently burdens a person's privacy interest "to call constitutional protection into play", so that the balancing of interests becomes important. *McKenna,* 451 F.Supp. at 1381. Factors that can be weighed in favor of requiring such a disclosure by a public employee include the nature of the work to be done by the employee and the dangers that can result from it. Somewhat apropos is the following language used in *McKenna:*

There is sufficient support to conclude that the psychological evaluation and hiring procedure taken as a whole is useful and effective in identifying applicants whose emotional make-up makes them high risk candidates for the job of fire fighting.[ ] Because fire fighting, like police work, involves life-endangering situations, the State interest is of the highest order. Plaintiffs lose sight of the fact that a fireman who loses emotional control endangers his own life as well as those of other firemen. While a psychological evaluation intrudes on an applicant's privacy, it may save him from the risk of losing his life. The life of a community, as well, depends, at the most basic level, on those whose job it is to protect the community from physical forces, like fire, that have escaped from the control that makes them productive. Property, and the security of the community, as well as lives, are at stake in improving the fire department. The State interest is compelling, indeed, and is served by the challenged evaluation and hiring procedure.

*Id.* (footnote omitted). The power vested in police officers has served as justification for infringement of their privacy interests. *See Policeman's Benev. Ass'n v. Township of Washington,* 850 F.2d 133, 141 (3rd Cir. 1988). The Third Circuit noted that:

> The Washington Township police officers are members of quasi-military organizations, called upon for duty at all times, armed at almost all times, and exercising the most awesome and dangerous power that a democratic state possesses with respect to its residents—the power to use lawful force to arrest and detain them . . . .

*Id.* As a court of the State of Texas put it:

> The appellant as a police officer is a public employee. By accepting public employment as a police officer he subordinated his right to privacy as a private citizen to the superior right of the public to an efficient and credible police department . . . .

*Richardson v. City of Pasadena,* 500 S.W.2d 175, 177 (Tex.Civ.App.—Houston [14th Dist.] 1973), *rev'd on procedural ground,* 513 S.W.2d 1 (Tex.1974).

Though discussing the matter in a Fourth Amendment context, the Supreme Court made known in *National Treasury Employees Union v. Von Raab* that the courts should take into account in the balancing process the privacy expectations of the employee. 489 U.S. 656, 678, 109 S.Ct. 1384, 1397, 103 L.Ed.2d 685 (1989). The Court explained:

> We think Customs employees who are directly involved in the interdiction of illegal drugs or who are required to carry firearms in the line of duty likewise have a diminished expectation of privacy in respect to the intrusions occasioned by a urine test. Unlike most private citizens or government employees in general, employees involved in drug interdiction reasonably should expect effective inquiry into their·fitness and probity. Much the same is true of employees who are required to carry firearms. Because successful performance of their duties depends uniquely on their judgment and dexterity, these employees cannot reasonably expect to keep from the Service personal information that bears directly on their fitness. Cf. *In re Caruso v. Ward,* 72 N.Y.2d 433 [432], 441, [534 N.Y.S.2d 142, 146–148] 530 N.E.2d 850, 854–855 (1988). While reasonable tests designed to elicit this information doubtless infringe some privacy expectations, we do not believe these expectations outweigh the Government's compelling interests in safety and in the integrity of our borders.

*Id.,* 489 U.S. at 672, 109 S.Ct. at 1394.

In *Whalen,* the Supreme Court rejected the argument that the autonomy branch was violated because persons were discouraged to make use of, and physicians were discouraged from prescribing, certain drugs by a practice of the State of New York of recording for disclosure to others the identities of all persons who had obtained pursuant to prescription certain drugs to which there was both a lawful and unlawful market. 429 U.S. at 597, 600–03, 97 S.Ct. at 875, 877–78. On that subject, the Court said:

> ... Unquestionably, some individuals' concern for their own privacy may lead them to avoid or to postpone needed medi-

cal attention. Nevertheless, disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient.[ ] Requiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy.

*Id.* at 602, 97 S.Ct. at 878 (footnote omitted). Similarly, in *Plante,* the Fifth Circuit, citing *Whalen,* took note that "mere deterrence is not sufficient for a successful constitutional attack." 575 F.2d at 1126.

■ The extent to which unwarranted disclosures of the personal information obtained or sought by the governmental authorities is likely to occur is a factor to be considered. *See Whalen,* 429 U.S. at 605, 97 S.Ct. at 879; *McKenna,* 451 F.Supp. at 1380–81.

C. *Sufficiency of the Allegations of Violation of Plaintiff's Right of Privacy Under the United States Constitution:*

■ The court is satisfied that the complaint has no well-pleaded allegation that would support a recovery based on the autonomy branch of the right of privacy. Accepting as true plaintiff's allegations, any impediment she would have to continuing her health care treatment would be self-imposed. Moreover, if the disclosures required by defendants are appropriate, any hesitation she might have to seek treatment would simply be a byproduct of the exercise by City of its lawful rights.

■ There is no doubt that plaintiff has privacy interests in her mental health records. Equally certain is that defendants have a strong interest in acquiring complete knowledge of the condition of plaintiff's mental health. Thus, a balancing of interests is required for there to be a decision as to whether the infringement of plaintiff's privacy interests has a constitutional dimension. City's interest is of the highest order because, to borrow words the Supreme Court used in *National Treasury Employees,* "the

public should not bear the risk that employees who may suffer from impaired perception and judgment will be [in] positions where they may need to employ deadly force." 489 U.S. at 671, 109 S.Ct. at 1393. Once the officials of City became aware of plaintiff's mental illness and that it had led to self-inflicted injury and a hospitalization where she underwent drug therapy, the officials of City would have been derelict in their duties to the public, plaintiff, and plaintiff's fellow officers if they had not required full disclosure by plaintiff of information pertaining to her condition and treatment and if they had not proceeded with utmost caution before allowing her to return to regular police duties. Accepting as true the allegations of the complaint, the court determines as a matter of law that the privacy interests of plaintiff in her mental health records are outweighed by the public interest in having full information in the hands of City's police department on the most important subject of whether plaintiff was mentally capable of exercising in an effective and safe manner the awesome and dangerous power of an armed police officer. Just as employees of the United States government who are involved in law enforcement activities should anticipate inquiries into their conditions of health, plaintiff should have, and undoubtedly did, "expect intrusive inquiries into [her mental] fitness for those special [functions of a police officer]." *Id.*

■ Nor can the court conclude from the allegations of the complaint, accepting them as true, that the scope of the information sought by defendants is constitutionally too great. The attempt by defendants to deal with a problem properly subject to City's control was, facially, a legitimate one; and, the fact that others might conclude that some of the information required by defendants concerning plaintiff's mental health was unnecessary, either in whole or in part, would not cause the conduct of defendants to be unconstitutional. The court should not be, and is not, called upon to draw a precise line to define information that City needs for its evaluation of whether plaintiff should be returned to regular duty.[5] Of necessity, City must be allowed a significant degree of flexibility, for, as the Third Circuit noted in *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*,

> It is not evident, however, that the City could draw the line more precisely even were it required to. No matter where the line is drawn, some information of marginal or little relevance will necessarily be elicited. Requiring a narrower line drawing might foreclose acquisition of highly relevant information.

812 F.2d 105, 113 (3rd Cir.1987).

Defendants were not obligated to defer to the opinions of the mental health specialists as to whether plaintiff was fit for return to regular duty. Those opinions would be but factors competent officials of City could take into account in making their decision. Total reliance on opinions of the health care providers would carry with it the obvious risks of deception caused by therapeutic-type recommendations, made in the interests of the patient rather than with the goal of ensuring that the objectives of the police department have been satisfied. Little imagination is required to visualize the predicament in which City and its officials would find them-

5. Plaintiff puts emphasis on the fact that defendants' request for records is broad enough to reach notes made by the health care professionals of things plaintiff told them when they were treating her or counseling with her. Presumably the doctors noted only those statements by plaintiff that had the potential to be relevant to her mental condition. The relevant records are the very kinds of things that responsible City officials would want to review before making the employment decisions that must be made in a case such as plaintiff's.

There is nothing unusual for non-medical persons who have an interest in the condition of a person's health to insist on a review of basic medical records, including consultation notes, rather than to accept without question the opinions of the medical professionals. Frequently, the members of the legal profession, and often the members of the judiciary, are faced with cases where they must review a medical professional's underlying records, including consultation or counseling notes, in order to test the accuracy of opinions expressed by a health care provider. There should be no surprise that non-medically trained supervisors of police personnel would also insist on raw data, as well as medical opinions, as sources of relevant medical information pertaining to the stability and qualifications of police officers or potential officers.

selves if plaintiff were to engage in an irrational act in the line of duty after return to regular police officer status if the return was allowed solely on the basis of the opinions of health care providers. Not only do City and its officials have · an obligation to protect plaintiff, her fellow officers, and the public from the dangers that could result from her return to regular duty when she is mentally ill-equipped, they have, as well, a duty to protect the City and its officials from civil liability that could result from irrational conduct by plaintiff. City and its officials, who have special knowledge of the factors that enter into whether a particular person should serve as a police officer, are better equipped than the health care providers, or other health care ·experts, to determine whether plaintiff should return to regular duty. The allegations of the complaint indicate as a matter of law that defendants have been, and are, proceeding in a reasonable and cautious manner in making that determination. Plaintiff's allegations demonstrate a legitimate state interest that outweighs the violations of plaintiff's privacy interests.

 There is no allegation that would support the conclusion that there is a likelihood that the mental health information defendants receive will be given inappropriate publication. The court presumes, in the absence of allegations to the contrary, that only legitimate uses will be made of the information.[6]

The court does not minimize the importance of the privacy aspect of the mental health records, but the court must give effect to the City's overriding interest in causing its police force to be staffed only by those who are particularly suited for the job. Thus, the court concludes that the conduct of defendants passes muster when weighed against the privacy rights of which plaintiff is vested

under the United States Constitution. Paraphrasing words used by another district court,

> The court [has weighed] the Department's legitimate interest in determining the plaintiff's fitness to serve as a police officer and the plaintiff's narrow interest in preventing disclosure of the personal information. The court finds that [the complaint shows on its face] that the municipality's interest in insuring that the plaintiff was capable of performing her duties substantially outweigh any privacy interest the plaintiff had in the information in question. . . .

*Redmond v. City of Overland Park*, 672 F.Supp. 473, 484 (D.Kan.1987). In this case, the relationship between the parties, plaintiff's status as a police officer, and the circumstances that led to the need for disclosure of her mental health information, are all pleaded in the complaint, with the consequence that the complaint itself provides overwhelming evidence that defendants acted properly.

### D. *Section 1983 Claims Based on the First, Fourth, and Fourteenth Amendments to the Constitution:*

In the paragraph of the complaint by which plaintiff expresses her theories of recovery under § 1983, plaintiff, after contending that the actions of defendants violated her right of privacy under the United States Constitution, adds that "[b]y these actions, defendants have jointly and severally deprived [plaintiff] of her rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution." Complaint at 7. A fair reading of the complaint is that she is contending that these alleged deprivations of rights occurred by reason of the facts she describes under the heading "Factual Allegations", which are summarized

---

**6.** Plaintiff argues in her brief that the inclusion in the release forms she was asked to sign of language that would authorize Kunkle to designate someone else to use the form provides opportunity for inappropriate publication. *See, e.g.,* Plaintiff's Response to Defendants' Motion to Dismiss at 20. However, there are no allegations in the complaint that would support the conclusion that Kunkle is apt to designate anyone who does not have a legitimate interest in knowing the contents of the records. More generally, there is no suggestion in the allegations of

the complaint that health information pertaining to plaintiff has been, or will be, misused by defendants. The fact that the officials of City who have had access to the records are not medical experts does not provide basis for a conclusion of inappropriate use of the records. According to the allegations of the complaint, the officials who have had access to the records would appear to be the ones who would need the information so that an informed decision could be made relative to plaintiff's status with the police department.

in this memorandum opinion and order under the heading "Alleged Factual Bases of All Plaintiff's Claims."

The court has searched in vain for any factual allegation that, if proved, would support a conclusion that any conduct of defendants deprived plaintiff of any of her rights under the Fourth Amendment. Apparently plaintiff relies on the Fourth Amendment as another way to assert her right-of-privacy claim. Plaintiff's Response to Defendants' Motion to Dismiss at 13. Her First Amendment claim seems to be yet another way of asserting that her right of privacy has been infringed. Plaintiff's right-of-privacy claim having already been dealt with, the court will not again deal with that claim disguised as First and Fourth Amendment claims. Plaintiff's Fourteenth Amendment claim appears to be but a repeat in different form of her Title VII claim. *Id.* at 13–14. That claim is dealt with in other parts of this memorandum opinion and order. It is not a claim that is properly assertable under § 1983.

E. *Plaintiff Cannot Assert Causes of Action under § 1983 Based on Alleged Violations of Title VII and ADA:*

 As part of her first cause of action, plaintiff additionally alleges that defendants are liable under § 1983 for alleged violations of Title VII and the ADA. In the Fifth Circuit, specific consideration of such an alternate remedy for employment discrimination is appropriate only if a violation can be made out on grounds different from those available under the employment discrimination statutes. *Parker v. Mississippi State Dep't of Pub. Welfare,* 811 F.2d 925, 927 n. 3 (5th Cir.1987). Because plaintiff has not asserted any such distinction, the court considers specifically only her ADA and Title VII claims. Plaintiff's conclusionary allegations that she is entitled to recovery under § 1983 for alleged violations of Title VII and the ADA are without legal merit.

F. *Even if a § 1983 Cause of Action had Otherwise been Alleged, the Doctrine of Qualified Immunity Would Apply as to the Claims Against the Individual Defendants:*

 The individual defendants assert that the doctrine of qualified immunity bars plaintiff's federal claims against them. Qualified immunity insulates government officials from civil damages liability when the officials' actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant,* —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 596 (1991); *Anderson,* 483 U.S. at 639–40, 107 S.Ct. at 3038–39. In *Harlow,* the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful...." 457 U.S. at 818, 102 S.Ct. at 2738. If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Fraire v. City of Arlington,* 957 F.2d 1268, 1273 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096.

 In analyzing whether the individual defendants are entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley,* 500 U.S. 226, ——, 111 S.Ct. 1789, 1793–94, 114 L.Ed.2d 277, 287

(1991); *Duckett v. City of Cedar Park,* 950 F.2d 272, 276–78 (5th Cir.1992). In so doing, the court should not assume that plaintiff has stated a claim, *i.e.* asserted a violation of a constitutional right. *Siegert,* —— U.S. at ——, 111 S.Ct. at 1793–94, 114 L.Ed.2d at 287. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller,* 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause the municipal employee to lose his qualified immunity defense. In *Hunter,* the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley* [475 U.S.], at 343, 341, 89 L.Ed.2d 271, 106 S.Ct. 1092 [at 1097, 1096]. This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued....

—— U.S. at ——, 112 S.Ct. at 537, 116 L.Ed.2d at 596.

If the court were to assume, *arguendo,* that the well-pleaded allegations of the complaint state a cause of action for violation of a right of privacy guaranteed to plaintiff by the United States Constitution, the court, nevertheless, would conclude that the individual defendants are protected by the doctrine of qualified immunity. At worst, the individual defendants would have exercised poor judgment in the scope of their requests. As a matter of law, they reasonably could have thought that their actions were consistent with the rights they are alleged to have violated. They acted in an objectively reasonable manner. Plaintiff has not alleged facts that, if true, would lead to the conclusion that when the conduct of which plaintiff complains occurred no public official of reasonable competence could have believed that the actions of the individual defendants were lawful. On the other hand, the complaint affirmatively alleges conduct that reasonable officials could have believed was lawful.

## IV.

### *Claims Under the Texas Constitution*

 As her second cause of action, plaintiff alleges that defendants violated her rights under the Texas Constitution, specifically art. I, §§ 13 and 19. Section 13 provides:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

Section 19 states:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land.

Plaintiff alleges that these provisions encompass a right to privacy that is treated by Texas law to be more fundamental than the privacy right embodied in the United States Constitution. The case authorities seem to bear plaintiff out. The law of the State of Texas is that the right of privacy created by the Texas Constitution yields only "when the government can demonstrate that an intrusion is reasonably warranted for the achievement of a compelling governmental objective that can be achieved by no less intrusive, more reasonable means." *Texas State Employees Union v. Texas Dep't of Mental Health & Mental Retardation,* 746 S.W.2d 203, 205 (Tex.1987). This standard of strict scrutiny seems to apply to the confidentiality branch as well as the autonomy branch. *Woodland,* 940 F.2d at 138. Application of this standard is a question of law for the court. *Id.*

 Turning to the question of whether the complaint alleges facts that affirmatively establish a compelling governmental objective that can be achieved by no less intrusive, more reasonable means, the court has determined that the allegations of the complaint do provide basis for such a legal conclusion. The analysis made above, under the heading "Sufficiency of the Allegations of Violation of Plaintiff's Right of Privacy Under the United States Constitution," applies here as well. Plaintiff urges that the governmental objec-

tive can be achieved by less intrusive, more reasonable, means and that those means are the receipt by defendants of opinions provided by plaintiff's mental health care providers and City's own health care expert. However, as previously noted, defendants should not be required to place sole reliance on the opinions of the health care experts, and they could not safely do so.

As to plaintiff's mental health care providers, City obviously cannot place blind reliance on their opinions because of the conflict of interests inherent in any attempt of those providers to accommodate the interests of their patient on the one hand, and the needs of the City, on the other. An important, if not the primary, obligation of plaintiff's doctors is to serve her needs. If those doctors were to conclude that plaintiff's return to regular police officer duty would have a beneficial effect on her mental health, their natural leaning would be to take steps to cause her to return to regular duty. They would be extremely reluctant to report to City that she remains unfit to return to regular duty if, from a medical standpoint, such a report could be a factor in delaying or preventing her recovery. The City authorities are entitled to take those obvious conflict of interest problems into account in evaluating whether reliance should be placed on bare opinions of plaintiff's doctors.

And, as to City's own health care expert, a self-evident fact is that such an expert is highly unlikely to obtain full and candid information if the expert is required to rely on interviews with plaintiff concerning factors that enter into her mental makeup. Common sense says that, if plaintiff has determined that she wants to return to regular police officer duty, there is a serious risk that she will limit the information she provides in an evaluation by City's expert to facts and circumstances she believes would support her claim that she is fit for such a return. If City's expert is to be able to provide a meaningful opinion to City, the expert would be required to have full information, certainly at least as much information as plaintiff's health care providers acquire. The most effective, and only reasonable, method of obtaining

that degree of information would be to cause all the information in possession of plaintiff's regular doctors to be provided to City for evaluation by its own expert.

Of course, in the final analysis, the City officials who have expertise on police department matters would be required to review all the information, including the raw data furnished to the health care providers and the opinions of the experts, before a fully informed decision could be made concerning plaintiff's future role in law enforcement.

The court determines that the factual allegations of the complaint lead to the conclusion that the intrusion of which plaintiff complains was "reasonably warranted for the achievement of a compelling governmental interest that [could] be achieved by no less intrusive, more reasonable means." *Texas State Employees Union,* 746 S.W.2d at 205.

## V.

### *Americans with Disabilities Act*

For her third cause of action, plaintiff alleges that defendants violated the ADA. The individual defendants assert that they are not liable under the ADA as they are not "employers" within the meaning of the Act. The ADA defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person...." 42 U.S.C. § 12111(5)(A). The term "person" has the same meaning as used in Title VII. 42 U.S.C. § 12111(7). Moreover, the Act provides that it is to be enforced in the same manner as Title VII. 42 U.S.C. § 12117. The law under Title VII is clear that individuals may be sued only in their official capacities, as agents of the offending employer. *Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir.1990). Only when a public official is working in his official capacity can the official be an agent of the government. *Id.* Accordingly, plaintiff's ADA claim against the individual defendants will be dismissed.[7]

7. The court, therefore, does not reach the issue

of qualified immunity with regard to this claim.

 Moreover, the allegations of plaintiff's amended complaint affirmatively show that she has no claim under ADA against City. Her overall claims are that City has wronged her by not returning her to regular duty as a police officer and by requiring that she cause disclosures to be made concerning her mental health. She very specifically describes her contentions as to the reasons and motives that led City to engage in the conduct she claims was wrongful, by alleging, as part of her "Factual Allegations," that:

XVI. The demands of the City and Department for Thompson's mental health records and her doctors' notes of her counseling sessions, when the City and Department had in hand their own psychological evaluation, their refusal to return her to full duty, and their outrageous new demands for records and reports, were all made pursuant to a policy adopted and enforced by those with final policy-making authority for Arlington, specifically Campbell and Kunkle. This policy and the restrictions on her employment have been applied discriminatorily to Thompson because of her sex and in retaliation for her protests to Kunkle regarding these demands....

Plaintiff's First Amended Complaint at 7. Obviously, if the allegedly wrongful conduct was engaged in "because of her sex and in retaliation for her protest to Kunkle regarding these demands" there is no legal basis for a contention that there was a violation of the ADA. The very allegations set forth above are incorporated by plaintiff in the part of her complaint where she purports to state a cause of action under ADA. *Id.* at 8. Immediately following that incorporation by reference, plaintiff describes her ADA "claim" as follows:

The Defendants are "employers" within the meaning of the statute. Thompson is, or is considered to be, "disabled" within the meaning of the Americans with Disabilities Act ("ADA"). Thompson is a "qualified individual with a disability" as

8. Once again, the court need not reach the issue of qualified immunity.

9. Contrary to plaintiff's allegations, see Plaintiff's Response to Defendants' Motions to Dismiss at

defined in the ADA. Defendants' refusal to employ her as a police officer, on unrestricted duty, and their establishment of terms and conditions that apply uniquely to her, violate the provisions of the ADA that prohibit discrimination against an otherwise qualified employee because she is disabled, or because she is considered to be disabled.

*Id.* at 8–9. Needless to say, plaintiff is incorrect as a matter of law in her allegation that City's allegedly wrongful conduct directed against her violates the ADA if, as she has specifically alleged, the conduct was engaged in because of her sex and in retaliation for her protests regarding demands that health information be made available to City.

 Furthermore, the factual allegations of the complaint affirmatively show that the conclusionary allegation of plaintiff that she is "disabled" is unfounded. If, as she contends, she is capable of performing the duties of a full-fledged police officer, obviously she is not disabled in her view. Nor does plaintiff suggest by any of her factual allegations that City regards her as having an impairment that substantially limits one or more of her major life activities. The mere fact that City has put her on restricted duty until it satisfies itself that she is qualified to return to regular duty does not suggest that City regards her as having an impairment of the kind contemplated by ADA. *See* 42 U.S.C. § 12102(2). Therefore, plaintiff's ADA claims against City likewise will be dismissed.

## VI.

### *Title VII Claim*

 Plaintiff's fourth cause of action is for violation of Title VII as amended by the Civil Rights Act of 1991. As previously stated, plaintiff does not have a cause of action against the individual defendants.[8] *Harvey,* 913 F.2d at 227–28; *Clanton v. Orleans Parish Sch. Bd.,* 649 F.2d 1084, 1099 (5th Cir. Unit A July 1981).[9] City alleges that plain-

37, *Harvey* explains clearly why public sector employees are not liable to co-workers. *See Harvey,* 913 F.2d at 228 n. 2 (distinguishing *Hamilton v. Rodgers,* 791 F.2d 439 (5th Cir.1986) and

tiff's Title VII claims are barred by her failure to exhaust administrative remedies. Plaintiff has pleaded exhaustion, which is sufficient to overcome the motion to dismiss. *Cf. EEOC v. Klingler Elec. Corp.,* 636 F.2d 104, 106 (5th Cir. Unit A Feb. 1981). City does not otherwise contend that plaintiff's Title VII claim should be dismissed.

### VII.

### *Texas Commission on Human Rights Act Claim*

■■■■ The TCHRA states that one of its general purposes is to provide for the execution of policies embodied in Title VII, as amended. Tex.Rev.Civ.Stat.Ann. art. 5221k, § 1.02(1) (Vernon Supp.1993). *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex.1991). Because the Act is to correlate state law with federal law, the Act is construed in a manner consistent with federal precedent. *Elstner v. Southwestern Bell Tel. Co.,* 659 F.Supp. 1328, 1345 (S.D.Tex.1987), *aff'd,* 863 F.2d 881 (5th Cir. 1988); *City of Austin v. Gifford,* 824 S.W.2d 735, 739 (Tex.App.—Austin 1992, no writ). Accordingly, the Act is interpreted to create a cause of action only against a public employer and not against its employees. *City of Austin,* 824 S.W.2d at 742. Therefore, plaintiff's claims against the individual defendants under the Act cannot stand. Plaintiff has sufficiently pleaded a claim against the City in this regard.

### VIII.

### *Texas Whistleblower Act*

■■■ For her sixth cause of action, plaintiff asserts that defendants have violated the so-called Texas Whistleblower Act. Like the statutes previously discussed, this Act provides no private right of action against a supervisor or co-worker. *Texas Dep't of Human Servs. v. Green,* 855 S.W.2d 136, 142

noting that *Hamilton* is nonauthoritative to the extent it conflicts with *Clanton*).

10. Contrary to plaintiff's allegation, *Houston v. Leach,* 819 S.W.2d 185 (Tex.App.—Houston [14th Dist.] 1991, no writ) does not address individual liability under the Act.

(Tex.App.—Austin 1993, writ requested).[10] The Act provides:

> A state or local governmental body may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith.

Tex.Rev.Civ.Stat.Ann. art. 6252–16a, § 2 (Vernon pam.1993). The term "local governmental body" is defined to include incorporated cities and towns, but not individuals. *Id.,* § 1(2). Although § 5 of the Act provides that a supervisor who suspends or terminates[11] an employee for reporting a violation of law is subject to a civil penalty, such penalty is to be collected by the attorney general or appropriate prosecuting attorney and the funds deposited in the general revenue fund of the state treasury. Once again, plaintiff's claim against the individual defendants will be dismissed.

■■■ The City maintains that plaintiff has not stated a claim against it, because she has not alleged a change in position as a result of her act of whistleblowing. The court agrees. According to her complaint, plaintiff was on restricted duty before she complained and remained on restricted duty after she complained. There was no discrimination because there was no adverse employment action. *See Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987). Therefore, plaintiff's whistleblower claim against the City will be dismissed.

### IX.

### *Texas Medical Practices Act and Health and Safety Code Violations*

■■■ Plaintiff's seventh cause of action addresses alleged violations of two statutes that provide legal remedies for improper disclosure of medical records by health care professionals. Tex.Rev.Civ.Stat.Ann. art.

11. Section 5 does not provide any punishment for "otherwise discriminat[ing] against" the employee as does § 2.

4495b, § 5.08 (Vernon pam.1993) concerns communications between patient and physician and sets out general rules for disclosure of physician records. An exception to the privilege of confidentiality created by the statute exists where the patient has authorized release of such information. Tex.Rev. Civ.Stat.Ann. art. 4495b, § 5.08(h)(5) (Vernon pam.1993). Section 611 of the Health and Safety Code pertains to mental health records and likewise provides that such records and confidential communications may not be disclosed. An exception exists where the patient has given written consent for such disclosure. Tex.Health & Safety Code Ann. § 611.004(a)(4) (Vernon 1992). Both statutes provide that a person aggrieved by a violation of them may bring an action for damages and injunctive relief. Tex.Rev.Civ.Stat. Ann. art. 4495b, § 5.08(*l*); Tex.Health & Safety Code Ann. § 611.005. Plaintiff has pleaded that she gave written authorization for release of certain medical records. Nothing in either statute suggests that the statute creates a cause of action against anyone seeking the release of confidential information. *See Wade v. Abdnor,* 635 S.W.2d 937, 939 (Tex.App.—Dallas 1982, writ dism'd.) Plaintiff simply has not stated a cause of action under either statute. Although plaintiff is now claiming that her consent was not voluntary, nothing in the statutes, which are a deviation from common law and are therefore to be strictly construed, *Wade,* 635 S.W.2d at 938, puts the burden on the health care professional to investigate and determine that a written consent form is valid before releasing information or even addresses the issue of invalid consent. Therefore, these claims against defendants will be dismissed.

## X.

*Intentional Infliction of Emotional Distress*

■■■■ For her eighth cause of action plaintiff asserts a claim against the individual defendants for intentional infliction of emotional distress. The elements of the claim are: (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused plaintiff emotional distress, and (4) the emotional distress suffered by plaintiff was severe. *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1142 (5th Cir.1991); *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). To establish such a claim, plaintiff would have to show that the individual defendants engaged in conduct that was so outrageous in character and extreme in degree that it surpassed " 'all possible bounds of decency,' such that it is 'utterly intolerable in a civilized community.' " *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1989) (quoting *Restatement (Second) Torts,* § 46, cmt. d); *Sauls v. Union Oil Co.,* 750 F.Supp. 783 (E.D.Tex.1990). Ordinarily such a claim will not lie when the acts complained of arise in the employment context, even though the conduct may be deplorable and even though it may rise to the level of illegality. *Johnson v. Merrell Dow Pharmaceuticals, Inc.,* 965 F.2d 31, 33 (5th Cir.1992); *Wilson,* 939 F.2d at 1145; *Horton v. Montgomery Ward & Co., Inc.,* 827 S.W.2d 361, 369 (Tex.App.—San Antonio 1992, writ denied). Here, the court concludes that, as a matter of law, even if the facts alleged by plaintiff are true, the conduct in question does not reach the level of being utterly intolerable in a civilized community.

## XI.

*Invasion of Privacy*

■■■■ Texas recognizes a cause of action for willful, unwarranted invasion of privacy. *Billings v. Atkinson,* 489 S.W.2d 858 (Tex.1973). The elements of the cause are: (1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion or private affairs or concerns, which (2) would be highly offensive to a reasonable person. *Valenzuela v. Aquino,* 853 S.W.2d 512, 513 (Tex.1993). An action for invasion of privacy will lie for four sorts of injuries:

1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

2. Public disclosure of embarrassing private facts about the plaintiff.

3. Publicity which places the plaintiff in a false light in the public eye.

4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

*Industrial Found. v. Texas Indus. Accident Bd.,* 540 S.W.2d 668, 682 (Tex.1976). Only the first type of injury is at issue here. That injury exists only where there has been "a physical invasion of a person's property or ... eavesdropping on another's conversation with the aid of wiretaps, microphones or spying." *Ross v. Midwest Communications, Inc.,* 870 F.2d 271, 273 (5th Cir.) (quoting *Gill v. Snow,* 644 S.W.2d 222, 224 (Tex. App.—Fort Worth 1982, no writ)), *cert. denied,* 493 U.S. 935, 110 S.Ct. 326, 107 L.Ed.2d 316 (1989).

 To the extent that defendants only sought information that was not disclosed, there is no violation of plaintiff's privacy rights as a matter of law. *See Gill,* 644 S.W.2d at 224; *Gonzales v. Southwestern Bell Tel. Co.,* 555 S.W.2d 219, 221 (Tex.Civ. App.—Corpus Christi 1977, no writ) (citing cases). Further, as for the information disclosed, plaintiff states that such disclosure was made with her consent. Whether such consent was voluntary, the court concludes that, as a matter of law, the obtaining of such information from a police officer seeking to return to full active duty would not have been highly offensive to a reasonable person. For these reasons, plaintiff has failed to state a claim for invasion of privacy.

### XII.

#### *Conclusion*

The court has concluded that the only theories of recovery asserted by plaintiff that can survive the motions to dismiss are her claims under Title VII, as amended, and her claims under the Texas Commission on Human Rights Act. From what the court has seen of this case thus far, the court has serious doubt that the surviving claims have merit. The indication is that counsel for plaintiff have adopted the course too often pursued of alleging every imaginable legal theory for recovery without regard to whether the theories have applicability to the facts

of the case at hand.[12] However, the allegations of the complaint are such that plaintiff is entitled to go forward with those claims.

The surviving claims survive only as to City. None of the claims survive as to the individual defendants.

### XIII.

#### ORDER

For the reasons discussed herein,

The court ORDERS that:

(a) All claims and causes of action asserted by plaintiff against Campbell, Kunkle, Pugh, Diaz and Rucker be, and are hereby, dismissed;

(b) All claims and causes of action asserted by plaintiff against City, except her claims under Title VII of the Civil Rights Act of 1964, as amended, and her claims under the Texas Commission of Human Rights Act, be, and are hereby, dismissed;

(c) By 2:00 p.m. on November 24, 1993, plaintiff file an amended complaint by which she limits her claims and causes of action to those mentioned above as having survived the motions to dismiss; and

(d) Once plaintiff has filed her amended complaint in compliance with this order, the stay on discovery automatically terminates.

---

12. Counsel seem to have no conception of, or, if they do, no concern with, the cost to the legal and judicial systems of having to deal with and weed out the totally unfounded claims from a pleading such as counsel have filed on behalf of plaintiff. The cost to the defendants for time defense counsel have devoted to such an effort, conservatively speaking, probably has been in the $20,000 to $30,000 range; and, if the time of the court and court staff were to be converted to dollars, that much, or more, would be added.