**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 94-60380**
**No. 94-60577**

**IMELDA C. CANTU,**

**Plaintiff-Appellee,**

**VERSUS**

**WILLIE ROCHA, IN HIS INDIVIDUAL CAPACITY, ET AL.,**

**Defendants,**

**WILLIE ROCHA, in his individual capacity**
**GREG SALAZAR, in his individual capacity**
**and PHILIP ETHRIDGE, in his individual capacity**

**Defendants-Appellants.**

Appeal from the United States District Court
for the Southern District of Texas

February 28, 1996

Before JOLLY, SMITH, and DeMOSS, Circuit Judges.

DeMoss, Circuit Judge:

This suit arises out of plaintiff Imelda Cantu's allegation that she was sexually assaulted at a party thrown by the University of Texas-Pan-Am's criminal justice club.  Cantu initiated this civil action against several state actors, based on their alleged mishandling of the assault investigation and other conduct which occurred after the assault.  This appeal involves only three of the

original defendants: (1) Willie Rocha, an investigator for the University of Texas-Pan Am (UT-PA) police department; (2) Greg Salazar, ex-Chief of Police for the UT-PA police department; and (3) Philip Ethridge, a professor in UT-PA's criminal justice department. Before the Court for consolidated review are two orders of the district court denying defendants' multiple motions for dismissal or summary judgment: (1) an order entered April 26, 1994, denying defendants' motion(s) for dismissal or summary judgment on the basis of qualified immunity only (appeal no. 94-60380); and (2) an order entered July 14, 1994, denying defendants' motion(s) for dismissal or summary judgment on other grounds (appeal no. 94-60577). The district court's holding that defendants are not entitled to immunity from suit will be reversed and judgment will be rendered that, under the applicable principles, defendants are entitled to immunity from Cantu's federal and state law claims. The remainder of the appeal will be dismissed for lack of appellate jurisdiction.

## I. RELEVANT FACTS

On the evening of December 14 and the early morning hours of December 15, 1990, UT-PA's criminal justice club threw a party in three adjacent rooms at the Bahia Mar Resort Hotel on South Padre Island.[1] The central room was used for dancing and refreshments. The side rooms were used for rest and bathroom facilities. About twenty students attended the party, which was supervised by

---

[1] UT-PA is located in Edinburg, Texas, roughly 100 miles from South Padre Island.

2

criminal justice professor Philip Ethridge. Cantu claims that fellow-student George Lopez sexually assaulted her during the party in one of the side rooms rented for the party.

## A. The Ethridge Meeting and Subsequent Events

Cantu did not immediately report the incident to law enforcement. She did, however, discuss what happened at the party with fellow students. Several months later, on April 3, 1991, Professor Ethridge was approached by several female students, including Rosa Linda Flores, Veronica Galvan, Yolanda Escobar, Rosalba Ramos and Maria Solis. The women informed Ethridge that Cantu was telling people she had been sexually assaulted at the December party. On April 5, a meeting was held to discuss the allegations. Present were Ethridge, the Dean of Students, an assistant professor in the criminal justice department, Ms. Cantu and several female students, including Rosa Linda Flores, Sylvia Galvan and Cynthia Rodriguez. At that meeting, Flores and Sylvia Galvan, who were both present at the party, related details strongly suggesting that the sexual activity between Cantu and Lopez was consensual. Based on that information, Ethridge suggested that Lopez should be present to give his side of the story. Cantu was offended by Ethridge's remark and took it as evidence that Ethridge did not believe her account of the assault. After the April 5 meeting, Cantu alleges, Ethridge embarked on a course of conduct intended to intimidate her, which included the following acts: (1) following her in the hallways; (2) obstructing her passage from a water fountain; (3) showing up in a classroom

3

and positioning himself where Cantu usually sat so that she could not avoid encountering him and (4) repeatedly going in and out of a room where she was taking a make-up exam, which affected her performance. Ethridge unequivocally denies that he followed Cantu, obstructed her access to a water fountain, positioned himself on her desk or took any other action designed to intimidate or harass Cantu.

Cantu claims that she was injured by Ethridge's behavior because she was unable to attend class if he was substituting and had to delay her graduation to avoid taking classes taught by Ethridge. On appeal, Cantu's only claim against Ethridge is a state law claim for intentional infliction of emotional distress.

### B. The Garza Meeting

On April 10, 1990, Cantu met with Edinburg Chief of Police Raul Garza. Garza claims that he informed Cantu and her mother that they needed to file a complaint with the South Padre Island Police Department, which had jurisdiction over the offense. When Cantu hesitated, Garza suggested that the UT-PA police department be consulted and phoned the chief of the UT-PA police department, Greg Salazar, who joined the meeting. After Cantu, Garza and Salazar discussed the assault, Chief Salazar opined that the UT-PA police department would have concurrent jurisdiction with the South Padre Island Police Department. Both Chief Garza and Chief Salazar understood that Cantu wanted the UT-PA police department to investigate. Cantu does not claim that she made any statement or took any action at that time to dispel that understanding. Cantu

4

gave Salazar a medical report prepared by Planned Parenthood, where she had gone to be examined some time after the assault. After accepting the report, Salazar advised Cantu to contact Willie Rocha, a licensed investigator with the UT-PA police department, for information about the investigation. Cantu never contacted Rocha and never filed a formal complaint with the UT-PA police department.

## C. The Rocha Investigation

Salazar assigned Rocha to investigate Cantu's assault allegation. Shortly thereafter Rocha interviewed three of Cantu's friends: Veronica Galvan, Yolanda Escobar and Maria Solis. Veronica Galvan, along with her sister Sylvia Galvan (not interviewed) were present at the party and drove home to Edinburg with Cantu. Veronica Galvan signed an affidavit memorializing the interview. Galvan's affidavit states that she observed Cantu and Lopez dancing in a "provocative way" which involved "grabbing his butt and penis." Later that evening when she and several friends tried to get Cantu out of the bathroom and away from Lopez, Cantu shook her fist at them and told them to leave her alone, which they did. The next morning Cantu looked nervous and began crying on the way home. Cantu stated she was ashamed of what she had done and that she was going to Planned Parenthood to be checked. Later Cantu told Veronica Galvan that she had bruises in her mouth and that she had "slept" with Lopez. Veronica Galvan stated that she did not know whether Cantu was raped or willingly participated.

Yolanda Escobar, who did not attend the party, was Cantu's confidante. Cantu told Escobar that she was worried because Sylvia Galvan had seen Cantu performing oral sex on Lopez. Cantu also told Escobar that Lopez was too rough, which caused bruises in her mouth. Finally, Cantu told Escobar that she was suicidal and was considering changing schools. Escobar did not know whether Cantu consented to sexual relations with Lopez or was assaulted.

Maria Solis, who also did not attend the party, signed an affidavit stating that Cantu had confided she was embarrassed about what happened at the party. Sylvia Galvan also confided in Solis. According to Solis, Sylvia Galvan claimed to have seen Cantu performing oral sex on Lopez. Sylvia Galvan told Solis that several women repeatedly tried to get Cantu away from Lopez, but that Cantu would not leave and, with a raised fist, told them to leave her alone.

Cantu alleges that Rocha made statements in these witness interviews with Galvan, Escobar and Solis that impeached her virtue and damaged her reputation. Cantu's allegations are supported by affidavits from the three witness-interviewees in which Galvan, Escobar and Solis state that Rocha unnecessarily prolonged the interviews and inappropriately offered his opinion of the case. Veronica Galvan and Escobar stated that Rocha made the following offensive statements: (1) that the incident "did not seem like rape"; (2) that Cantu "had the hots" for Lopez; (3) that there is only so much provocation a person can take; (4) that Cantu, Lopez and another woman were involved in a "love triangle" (illustrated

6

by drawing a triangle with the names of Cantu, Lopez and an unidentified third person); (5) that Rocha intended to interview Cantu and would arrest her if he thought she was lying and (6) that he would subpoena their sister (Sylvia Galvan) if she did not come in to tell what she knew about the assault. Solis' affidavit states that Rocha remarked that the incident "did not seem like rape" and opined that Cantu "had the hots" for Lopez. Solis also claimed that Rocha asked her offensive hypothetical questions, such as whether she would bite someone if being forced to give a "blow job."

The UT-PA investigation was eventually dropped when Cantu did not file a formal complaint. Subsequently, university officials reached the conclusion that alleged sexual assault fell outside the jurisdiction of the UT-PA police department. In August 1991, Cantu reported the incident to the South Padre Island Police Department. The grand jury, however, failed to indict and no criminal action has ever been prosecuted.

## II.  PROCEDURAL HISTORY

Cantu sued initially in state court. Defendants removed and filed motions: (1) for review of their immunity defense; (2) for protection from discovery pending resolution of the immunity issue and (3) for dismissal or summary judgment. Defendants' motion for protection pending resolution of the immunity issue was granted. Cantu moved for permission to amend her complaint, which was also granted. Defendants filed supplemental motion(s) for dismissal or summary judgment, alleging new grounds. In March 1994, the

7

magistrate judge assigned to the case recommended that all defendants be granted immunity, that the defendants' motion for summary judgment be granted and that Cantu's claims be dismissed.

After Cantu filed objections, the district court heard argument on the immunity issue and Cantu was again granted permission to amend her petition. In her third amended complaint Cantu alleged causes of action against Rocha and Salazar for invasion of her federal constitutional right to privacy, state law causes of action against Rocha for invasion of privacy and defamation, and a state law cause of action against Ethridge for intentional infliction of emotional distress.

On April 26, 1994, the district court entered an order granting the defendants immunity from damages in their official capacities but denying Rocha, Salazar and Ethridge qualified immunity in their individual capacities.[2] Defendants Rocha, Salazar and Ethridge filed a notice of appeal, which was docketed as appeal number 94-60380. On July 14, 1994, the district court entered a second order denying defendants' motion(s) to dismiss or for summary judgment on grounds other than immunity. Defendants Rocha, Salazar and Ethridge filed a second notice of appeal, which

---

[2] Cantu's suit against the defendants in their official capacities is in essence a suit against the involved branch of the University of Texas, an agency of the State of Texas. **Kentucky v. Graham**, 473 U.S. 159 (1985). Absent waiver, the Eleventh Amendment prohibits damage suits against a State in federal court. **Id**. at 3107. The district court held that the State of Texas did not effect a waiver of immunity applicable to this case. Therefore, the defendants were not subject to suit in their official capacities in federal court.

8

was docketed as appeal number No. 94-60577, and the two appeals were consolidated.

### III.  APPELLATE JURISDICTION

As an initial matter, we must address the basis of our jurisdiction over defendants' appeal.  **Mosley v. Cozby**, 813 F.2d 659, 660  (5th Cir. 1987).  Federal courts of appeal have jurisdiction of "appeals from all final decisions of the district courts."  28 U.S.C. § 1291 (West 1993).  Under the collateral order doctrine, a small class of interlocutory orders that (1) conclusively determine, (2) important issues, which are separate from the merits of the action, and (3) which would be effectively unreviewable on appeal from a final judgment, are deemed "final" for purposes of appeal.  **Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.**, 113 S. Ct. 684, 688 (1993) (restating doctrine articulated in **Cohen v. Beneficial Indust. Loan Corp.**, 337 U.S. 541 (1949)).  Interlocutory appeal is the exception, not the rule.  Appeals from district court orders denying summary judgment on the basis of qualified immunity are immediately appealable under the collateral order doctrine, when based on an issue of law.  **Mitchell v. Forsyth**, 105 S. Ct. 2806, 2816 (1985); **Hale v. Townley**, 45 F.3d 914, 918 (5th Cir. 1995); **Sorey v. Kellett**, 849 F.2d 960 (5th Cir. 1988).  During the pendency of this appeal, the Supreme Court clarified that orders are based on an issue of law when they concern only application of established legal principles, such as whether an official's conduct was objectively reasonable in light of clearly established law, to a given (for purposes of appeal) set

9

of facts. **Johnson v. Jones**, 115 S. Ct. 2151, 2156 (1995). Orders that resolve a fact-related dispute of "`evidence sufficiency', i.e. which facts a party may, or may not, be able to prove at trial," however, are not immediately appealable and must await final judgment. **Id**.

**Johnson** concerned three police officers' appeal from denial of their summary judgment motion seeking qualified immunity from plaintiff's claim that they beat the him during an arrest. The officers conceded they were present during the arrest, but denied that they had beaten the plaintiff or been present while others did so. **Id**. at 2153. The district court denied the motion. **Id**. at 2154. The Seventh Circuit held that it lacked appellate jurisdiction over the police officers' "`evidence insufficiency'" contention that `we didn't do it.'" **Id**. at 2154. The Supreme Court affirmed. Allowing interlocutory appeal of orders decided by resolution of a factual dispute central to the underlying claim, the Court stated, violates the collateral order doctrine's requirement that determination of the interlocutory issue be conceptually distinct from the merits of the underlying case. **Id**. at 2157. Unlike the present appeal, the defendants in **Johnson** did not contend that when taking <u>all</u> of the plaintiff's factual allegations as true no violation of a clearly established right was shown. To the contrary, it was undisputed that <u>if</u> the ultimate facts showed that the defendants participated in the alleged beating, then the defendants had violated the plaintiff's clearly

10

established rights; the **Johnson** defendants claimed immunity on the basis that the fact of the beating never occurred.

In **Behrens v. Pelletier**, No. 94-1244, 1966 WL 71218 (U.S. Feb. 21, 1996), the Supreme Court clarified that **Johnson** "permits [the defendant] to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the **Harlow** standard of `objective legal reasonableness.'" **Id**. at *8. Thus, in **Behrens**, the district court's determination that "material issues of fact remain" did not preclude appellate review. **Id**. In the wake of **Behrens**, it is clear that **Johnson**'s limitation on appellate review applies only when "what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred." **Id**.

**A.  Federal Immunity - § 1983 Claims Against Rocha and Salazar**

Applying these principles, we conclude that the Court has appellate jurisdiction to review the district court's denial of defendant Rocha and Salazar's summary judgment motion seeking qualified immunity from Cantu's federal law claims under § 1983. In contrast to **Johnson**, there is no significant fact-related dispute about Rocha or Salazar's actions in this case. Rocha does not deny that he made the statements attributed to him in the witness interviews. Salazar does not deny that he had received complaints about Rocha's conduct in the past. Similar to the appeal we considered in the recent case of **Hare v. City of Corinth**, "[t]his appeal does not present the fact-intensive inquiry eschewed

11

by **Johnson**. Rather, it presents a legal issue antecedent to the determination of whether there are genuine issues of material fact. Our review of the legal issues in this appeal goes to the legal question of the correct legal standard." **Hare v. City of Corinth**, No. 93-7192, slip op. at 9 (5th Cir. Jan 29, 1996). What was disputed and decided by the district court in the case now before us was whether the conduct as alleged violated a clearly established statutory or constitutional right of which a reasonable person would have known. This is precisely the variety of order that **Johnson** distinguishes as being separable from the merits and appealable on interlocutory appeal.

### B.   State Law Immunity - Claims Against Rocha and Ethridge Based on Texas Law

Defendants Rocha and Ethridge also appeal the district court's denial of qualified immunity under state law from Cantu's state law claims for invasion of privacy (Rocha), defamation (Rocha) and intentional infliction of emotional distress (Ethridge). Whether an order is an appealable "final decision" for purposes of 28 U.S.C. § 1291 is a question of federal, not state, law. **Sorey v. Kellett**, 849 F.2d 960, 962 (5th Cir. 1988). We have previously held that an order denying qualified immunity under state law is immediately appealable as a "final decision," provided that "the state's doctrine of qualified immunity, like the federal doctrine, provides a true immunity from suit and not a simple defense to liability." **Id**. at 962 (concluding that interlocutory orders denying qualified immunity under Mississippi law are immediately appealable).

12

We are persuaded that Texas law insulates government officials from the burden of suit, as well as from civil liability for damages. See **City of Lancaster v. Chambers**, 883 S.W.2d 650, 653 (Tex. 1994) ("[g]overnment employees are entitled to immunity from suit arising from performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority"); **Albright v. Dep't of Human Services**, 859 S.W.2d 575, 579 & n.1 (Tex. App.--Houston [1st Dist.] 1993, no writ) (summary judgment is the appropriate vehicle for deciding qualified immunity, which protects officials from the burdens of litigation as well as from liability); TEX. CIV. PRAC. & REM. CODE § 51.014(5) (Vernon Supp. 1995) (allowing interlocutory appeal of orders denying motions for summary judgment based on the assertion of immunity);[3] see also **Travis v. City of Mesquite**, 830 S.W.2d 94, 102 n.4 (Tex. 1992) (Cornyn, J., concurring) ("[t]he very reasons for a grant of immunity are effectively unsalvageable if the official is determined to be immune from liability only after a trial on the merits"). While **City of Lancaster** establishes a test for qualified immunity in Texas that is "somewhat less likely to be resolved at the summary judgment stage than is the federal test," the opinion does not purport to make any change in the established principle

---

[3] We recognize that the Texas Legislature's decision to make such orders appealable is not controlling. Federal law controls the question of whether an order is "final" for purposes of § 1291. **Sorey**, 849 F.2d at 962. The statute is nonetheless probative of Texas' view that qualified immunity protects officials from the rigors of suit, as well as liability. See **id**. (Mississippi procedural rules relevant on issue of whether state recognizes qualified immunity from suit, as well as liability).

13

that once that test is met, the privilege of immunity protects the official from both the rigors of suit and ultimate liability for civil damages.  See **City of Lancaster**, 883 S.W.2d at 655-57 (citing Justice Cornyn's concurring opinion in **Travis** and acknowledging the need to "achieve[] a fair balance between the competing interests at stake").

In Texas, qualified immunity encompasses an immunity from suit.  Therefore, under **Sorey**, orders premised on the denial of qualified immunity under Texas state law are appealable in federal court to the same extent as district court orders premised on the denial of federal law immunity.  The issue then becomes whether the district court's denial of Rocha and Ethridge's summary judgment motions on the issue of immunity "turned on an issue of law," as required by **Mitchell** and **Johnson**.

The district court's order only generally denies Rocha's assertion of immunity, and does not explicitly address Rocha's entitlement to immunity from suit on Cantu's state law defamation and invasion of privacy claims, which are based on Rocha's statements to Cantu's friends in the course of the investigation. The summary judgment record nonetheless demonstrates that there is no material fact dispute about what Rocha said or did during the interviews.  Thus, resolution of Rocha's entitlement to state law immunity may be decided by applying well-established principles of Texas law to the facts, which are given for the purposes of appeal. For that reason, the district court's decision may be considered "final" for purposes of 28 U.S.C. § 1291, and this Court has

14

appellate jurisdiction to review Rocha's appeal from the district court's denial of qualified immunity on Cantu's state law invasion of privacy and defamation claims.

As to Ethridge, the district court concluded that he was not entitled to immunity because the acts alleged by Cantu, harassment and intimidation, could not be considered acts authorized by his employer, the University. In other words, taking the plaintiff's allegations as true, the district court held that Ethridge was not entitled to immunity under Texas "official immunity" law. The district court's order therefore turned on an issue of law.

Although Ethridge squarely denies the conduct alleged by Cantu, his qualified immunity defense does not present the sort of "evidence sufficiency" point held not to be appealable in **Johnson**. The district court essentially assumed the truth of Cantu's allegations, thereby assuming the disputed factual issue in her favor. (In this connection it is important to understand that it is not the district court's assumption of the disputed factual issue that Ethridge appeals; indeed, under **Johnson**, he could not interlocutorily appeal such a ruling. **Johnson**, 115 S. Ct. at 2158.)) The district court then applied the controlling principles of Texas qualified immunity law -- whether the acts complained of were within the scope of the defendant official's authority -- to determine the issue of immunity.

In this case, review of Ethridge's assertion on appeal would not require this court to decide, on the basis of a limited record, a disputed factual issue that may well be resolved at trial, i.e.,

15

whether Ethridge engaged in the acts of which he was accused. The court simply must decide whether, under the facts as alleged by Cantu, Ethridge is entitled to qualified immunity under Texas law. We conclude that this court has appellate jurisdiction of Ethridge's appeal from the district court's denial of his motion for summary judgment on the basis of qualified immunity.

**The District Court's July 14 Order - Appeal Number 94-60577**

The two orders on appeal are not clearly referenced to the defendants' multiple motions for dismissal or summary judgment. Nonetheless, it is obvious from the record that the district court intended to delineate immunity issues, which are addressed in the order appealed by docket number 94-60380, from other grounds for dismissal or summary judgment, which are addressed in the order appealed by docket number 94-60577. Any discussion of the subject defendants' entitlement to summary judgment on the basis of immunity in the district court's July 14 order is duplicative to its analysis on April 26.

The Supreme Court has been reluctant to endorse the exercise of pendant appellate jurisdiction over rulings that, while being related to the denial of qualified immunity, are not themselves independently appealable prior to judgment. See **Swint v. Chambers County Comm'n**, 115 S. Ct. 1203, 1212 (1995) (finding exercise of pendant appellate jurisdiction improper where review of the county's summary judgment motion was neither "inextricably intertwined" with nor "necessary to ensure meaningful review" of the district court's denial of qualified immunity). Defendants do

16

not claim that review of the non-immunity grounds addressed in the district court's July 14 order is inextricably intertwined or necessary to resolution of the qualified immunity issue. Whether the defendants' conduct was objectively reasonable in light of clearly established law is a separate and narrower issue than whether Cantu adduced sufficient evidence on each element of each of Cantu's multitude of federal and state law claims to avoid summary judgment. There is, therefore, no compelling reason to explore the uncharted terrain of pendant appellate jurisdiction in this case, and appeal number 94-60577 will be dismissed for lack of appellate jurisdiction. See **Swint**, 115 S. Ct. at 1211. Furthermore, given our disposition of this case on the qualified immunity appeals, appeal number 94-60577 is moot.

## IV.   QUALIFIED IMMUNITY

Having successfully negotiated the path mandated by **Mitchell**, **Johnson** and **Sorey**, we proceed to review the district court's denial of Rocha, Salazar and Ethridge's motions for summary judgment on the basis of qualified immunity *de novo*, using familiar standards. **Harper v. Harris County**, 21 F.3d 597, 600 (5th Cir. 1994).

### A.   Federal § 1983 Right To Privacy Claims - Rocha and Salazar

Federal immunity law shields state officials from personal liability under federal law for civil damages as long as their conduct could reasonably have been thought consistent with the rights they are alleged to have violated. **Anderson v. Creighton**, 107 S. Ct. 3034, 3039 (1987); **Harlow v. Fitzgerald**, 102 S. Ct. 2727, 2738 (1982) (whether an official is entitled to qualified

17

immunity depends on the "objective legal reasonableness" of the official's action as measured by clearly established law). The right the official is alleged to have violated must have been clearly established at the time that the conduct in issue occurred. See **Anderson**, 107 S. Ct. at 3038. Further, the contours of the right must be sufficiently clear that a reasonable official would understand that the conduct in issue constitutes a violation. **Id**. Where reasonable public officials could differ on the lawfulness of the official's actions, the official is entitled to qualified immunity. **Johnston v. City of Houston**, 14 F.3d 1056, 1059 (5th Cir. 1994). "Qualified immunity protects `all but the plainly incompetent or those who knowingly violate the law.'" **Anderson**, 107 S. Ct. at 3038 (quoting **Malley v. Briggs**, 475 U.S. 335, 341 (1986)).

Section 1983 provides a cause of action for state deprivation of the rights and privileges secured by federal law. Cantu's third amended complaint alleges that Rocha violated her constitutional right to privacy in violation of 42 U.S.C. § 1983 by: (1) making slanderous remarks in the witness interviews; (2) conducting an extra-jurisdictional investigation into her sexual assault and (3) failing to utilize a pseudonym procedure specified in Texas law for sexual assault investigations. Cantu alleges Chief Salazar violated her constitutional right to privacy in violation of 42 U.S.C. § 1983 by: (1) failing to properly train, supervise or control Rocha despite knowledge of past student complaints about Rocha; (2) instructing Rocha to conduct an extra-jurisdictional

18

investigation and (3) by failing to advise Cantu that a pseudonym procedure was available.

The right to privacy consists of two inter-related strands; one protects an individual's interest in avoiding disclosure of personal matters (the confidentiality strand) and the other protects an individual's interest in making certain personal decisions free of government interference (the autonomy strand). **Fadjo v. Coon**, 633 F.2d 1172, 1175 (5th Cir. 1981). In the context of government disclosure of personal matters, an individual's right to privacy is violated if: (1) the person had a legitimate expectation of privacy; and (2) that privacy interest outweighs the public need for disclosure. **Fadjo v. Coon**, 633 F.2d 1172, 1175-76 (5th Cir. 1981) (discussing the balancing test required to evaluate privacy right claims).

## 1. Rocha's Remarks in the Witness Interviews

Cantu claims that Rocha's statements to the three witnesses violated the confidentiality branch of her right to privacy. The district court, denying defendants' motion for qualified immunity, relied exclusively on this ground, holding that Rocha's comments were "so patently offensive and useless to his investigation that a reasonable officer would have known that he or she was violating Plaintiff's clearly established right of privacy." Engaging the balancing test, the district court noted that the alleged statements served no legitimate state interest because they were made "gratuitously and could not have aided in apprehending the person who allegedly perpetrated the assault."

19

It is unclear what the district court meant to imply by stating that the comments were made "gratuitously." Officer Rocha is not alleged to have disclosed any information about the assault or Cantu's behavior that the witnesses did not already know. See **Cinel v. Connick**, 15 F.3d 1338, 1343 (5th Cir.) ("[a]ppellant cannot claim that his privacy has been invaded when allegedly private materials have been disclosed to those who already know the details of that material"), cert. denied, 115 S. Ct. 189 (1994). Rather, it appears that Rocha was commenting upon information initially spoken of by the witnesses. In addition, the state's legitimate law enforcement interest is not limited to apprehending an alleged perpetrator. There is also a substantial interest in ferreting out the basis and veracity of criminal allegations. See **Ramie v. City of Hedwig Village**, 765 F.2d 490, 492-93 (5th Cir. 1985) ("[a]lthough in retrospect some question may be determined to be irrelevant and not within the government's proper sphere of concern, police officers must have the freedom at least to ask the questions they believe will aid them in the investigation" and recognizing that asking otherwise proper questions in an abusive and harassing manner does not amount to invasion of privacy), cert. denied, 475 U.S. 1062 (1986).

There is no invasion of privacy when the material disclosed was already known to the recipient. **Cinel**, 15 F.3d at 1343. Law enforcement must be allowed considerable latitude to explore the veracity of a complainant, as well as the identity of the alleged perpetrator, and to explore reasonable inferences raised by what

20

witnesses offer in an investigatory context. See **Ramie**, 765 F.2d at 492-93. As measured by clearly established law, Cantu failed to alleged violation of the constitutional right to privacy. See **Anderson**, 107 S. Ct. at 3039 (relevant legal rule which must be "clearly established" is identified with reference to the particularized facts and circumstances of the case). It follows that Rocha is entitled to summary judgment on the issue of qualified immunity from suit on Cantu's § 1983 claim that he invaded her privacy by making inappropriate remarks in the witness interviews.

Cantu also asserted a § 1983 claim against Salazar based on Rocha's objectionable remarks. Cantu argues that Salazar is liable for Rocha's misconduct because he failed to properly train, supervise or control Rocha's actions. Although supervisory officials cannot be held liable under § 1983 on a theory of respondeat superior, they may be liable if their own action or inaction, including a failure to properly supervise, amounts to gross negligence or deliberate indifference which is the proximate cause of a constitutional violation. **Bowen v. Watkins**, 669 F.2d 979, 988 (5th Cir. 1982). Cantu attempts to demonstrate Salazar's independent culpability with evidence that Salazar was aware of other student complaints against Rocha. Our judgment that Cantu's allegations against Rocha with regard to the witness interviews failed to allege violation of clearly established law mandates the conclusion that Cantu's derivative claim against Salazar must also fail. Assuming, *arguendo*, that Salazar was grossly negligent or

21

deliberately indifferent, Cantu failed to allege any proximately caused constitutional violation.  Salazar is entitled to qualified immunity on Cantu's claim that his supervision of Rocha was negligent.

## 2. Extra-jurisdictional Character of the Investigation

Cantu also claims that the extra-jurisdictional character of the investigation violated her right to privacy.  Cantu cites no authority for the proposition that there is a clearly established constitutional right to be free from an investigation conducted in the absence of jurisdiction.  Cantu maintains, however, that she did not authorize the investigation, presumably attempting to invoke the "autonomy," or personal decision prong of the privacy right.  Privacy rights may well be implicated in a case involving an investigation conducted without jurisdiction and over the objection of a complainant whose veracity and credibility is not in issue.  That is not the case here.  Both Chief Raul Garza of the Edinburg police department and Chief Salazar were under the impression that Cantu wanted the assault investigated.  Cantu voluntarily gave Chief Salazar the Planned Parenthood report as well as information about the alleged assault.  We conclude that the investigation was not in violation of a clearly established privacy right.  Moreover, even if we were to assume, *arguendo*, that Cantu had alleged violation of a clearly established right, Rocha and Salazar would still be entitled to immunity because the officers had an objectively reasonable basis for assuming jurisdiction.

Salazar's initial conclusion that jurisdiction existed was based on the fact that both of the individuals involved were students and that the incident occurred at a university function, in a hotel room leased with university funds. The reasonableness of his conclusion is attested to by the fact that the Edinburg Chief of Police, Raul Garza, also believed UT-PA would have jurisdiction. Rocha and Salazar also offer Texas Education Code § 51.203(a) and (b) which provide that university police officers have primary jurisdiction in all counties where property is "owned, leased, rented, or otherwise under the control" of the university.

South Padre Island, where Cantu says she was assaulted, is located in Cameron County. The UT-PA main campus is located in Hidalgo County. UT-PA has a marine laboratory in Cameron County and the University of Texas maintains a campus in Brownsville, which is also in Cameron County. Within an officer's primary jurisdiction, the officer is "vested with all the powers, privileges, and immunities of peace officers," which include the power to arrest individuals for violation of state law and the power to enforce traffic laws. TEX. EDUC. CODE § 51.203(b) (Vernon Supp. 1995). Cantu argues that the statute should be construed to limit the peace officer's primary jurisdiction to university property and offers letters in which UT-PA administrative officials concluded subsequent to the Rocha investigation that the UT-PA police department lacked jurisdiction. We need not decide that issue of Texas law, as Officers Rocha and Salazar had an objectively reasonable basis for proceeding with the investigation.

23

Cantu has no clearly established right to be free of an extra-jurisdictional investigation into a sexual assault when that investigation is launched by her own report of the relevant facts to authorities. Cantu neither implicitly nor explicitly requested that Salazar abstain from investigating. Nor has she demonstrated any harm arising out of the extra-jurisdictional nature of the investigation. Extra-jurisdictional investigations are not *per se* violative of the constitutional guarantee of privacy. Finally, Rocha and Salazar held an objectively reasonable belief that they were operating within the university's primary jurisdiction. Therefore, Officers Rocha and Salazar are entitled to qualified immunity on this claim.

## 3. Pseudonym Procedure

Cantu alleges that Salazar and Rocha's failure to utilize the pseudonym procedure specified in Texas Code of Criminal Procedure article 57.02 for sexual assault investigations violated her privacy right. Rocha and Salazar respond that the statute does not require law enforcement to offer or utilize the procedure. Rather, it provides a way for sexual assault victims to keep their name out of the public record. Article 57.02 speaks to the use of a pseudonym to protect a victim's identity on documentation and in judicial proceedings and applies only after the victim completes a specified form and returns that form to law enforcement. There is no evidence in the record that Cantu completed that form or otherwise requested anonymity. The statute does not purport to control use of a victim's name when interviewing potential

24

witnesses and has no application in a case such as this one where the objectionable disclosure was to witnesses who already knew both the name of the victim and the details of the assault. See **Cinel**, 15 F.3d at 1343 (no invasion of privacy when confidential information disclosed was already known to recipients of information). Cantu's claim that Salazar and Rocha failed to use the procedure does not allege a violation of a Cantu's privacy right and Salazar and Rocha are entitled to immunity on that claim.

## B. State Law Claims - Rocha

Under Texas law, "[g]overnment officials are entitled to immunity from suit arising from performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." **City of Lancaster v. Chambers**, 883 S.W.2d 650, 653 (Tex. 1994). Rocha was performing a discretionary function within the scope of his authority for immunity purposes. See **id**. at 654 (citing **Wyse v. Department of Public Safety**, 733 S.W.2d 224, 227 (Tex. App.-- Waco 1986, writ ref'd n.r.e.) for the proposition that the investigatory duties of police officers are discretionary) and **id**. at 658 (an official is acting within the scope of granted authority for immunity purposes when discharging duties generally assigned to that official, even though the official may be acting unlawfully). An official acts in "good faith" if any reasonably prudent officer could have believed that the conduct was consistent with the plaintiff's rights. **Id**. at 656-57. Thus, Texas' law of qualified or official immunity is substantially the same as federal immunity law. **Id**. at 656. There

is, however, one important difference. Summary judgment is not appropriate, as it is in the federal system, simply on a showing that the right alleged to have been violated was not clearly established. **Id**. at 657 (good faith test for immunity from nonconstitutional torts does not incorporate a threshold legal question analogous to federal immunity law's "clearly established law" requirement). Texas' test focuses solely on the objective legal reasonableness of the officer's conduct. **Id**. at 656-57. Accordingly, whether Rocha is entitled immunity on any of the state law claims depends solely on whether his actions were objectively reasonable.

Cantu's third amended petition alleges two state law claims against Rocha, invasion of privacy and defamation.

## 1. Invasion of Privacy

Although Texas law makes several types of conduct actionable as an invasion of privacy, see **Moore v. Big Picture Co.**, 828 F.2d 270, 272 (5th Cir. 1987), Cantu's third amended complaint alleges only that Rocha's remarks placed her in a false light before the public. Texas has soundly rejected the false light tort as being duplicative of existing causes of action which provide more procedural safeguards. **Cain v. Hearst Corp.**, 878 S.W.2d 577, 578 (Tex. 1994) ("[W]e have never embraced nor recognized . . . the false light tort. We decline to do so today."). Cantu's brief therefore attempts to turn her false light claim into one for public disclosure of private matters, which is actionable when publication would be highly offensive to a reasonable person and

26

there is no legitimate public concern meriting disclosure. **Industrial Foundation of the South v. Texas Indus. Accident Bd.**, 540 S.W.2d 668, 682-83 (Tex. 1976), cert. denied, 430 U.S. 931 (1977). In such a case, the information disclosed must have been confidential, in the sense that it was previously "secret" and that disclosure would cause harm. **Id**. at 683. Rocha did not disclose previously secret information to Galvan, Escobar or Solis. The three witnesses were in fact in the process of disclosing the very same information to Rocha. Rocha's comments, however crude, summarized his impressions of the women's testimony. A reasonably prudent officer could have believed that the remarks were consistent with Cantu's rights and Rocha is entitled to state law immunity from suit on Cantu's state law invasion of privacy claim.

## 2. Defamation

An oral statement published to a third person is slanderous under Texas law when it is (1) defamatory, (2) false, (3) refers to an ascertainable person and (4) is not protected by any privilege. **Reeves v. Western Co. of N. Am.**, 867 S.W.2d 385, 393 (Tex. App.-- San Antonio 1993, writ denied). Cantu claims that Rocha's comment to the witnesses that "he was going to interview" Cantu and that "if he felt she was lying to him he was going to arrest her" was slanderous *per se* because it falsely and unambiguously imputed criminal conduct to Cantu. See **Reeves**, 867 S.W.2d at 395-96 (statement that unambiguously and falsely imputes criminal conduct to plaintiff is slanderous *per se*). Rocha's entitlement to immunity from suit on Cantu's defamation claim depends on an analysis of

27

Rocha's objective good faith. Rocha's comment does not unambiguously impute criminal conduct to Cantu. **Reeves**, 867 S.W.2d at 396 (statement does not unambiguously impute criminal conduct to plaintiff unless an ordinary person would reasonably assume that the plaintiff was charged with a violation of criminal law). Galvan and Escobar could not reasonably have concluded that Cantu was then charged with a criminal act. Police officers must be afforded a certain degree of latitude when conducting investigatory interviews. Taken in context of the information disclosed in the interview, a reasonably prudent officer might have proceeded along the same lines. We conclude that Rocha's comment was made with a "good faith" belief that it would further the investigation. Therefore, Rocha is entitled to immunity from suit on Cantu's state law defamation claim.

## C. State Law Claims - Ethridge

Ethridge argues that, as a matter of law, Cantu has not alleged acts that constitute the tort of intentional infliction of emotional distress under Texas law, irrespective of whether his acts were authorized by UT-PA. Ethridge essentially argues that the district court's denial of qualified immunity on grounds that the alleged conduct was not in the scope of his authority is in error. The threshold question, which was not addressed, is whether, under the facts as alleged, Ethridge committed such a tort at all. This question is a purely legal one, and we consequently have appellate jurisdiction to consider it in the context of a qualified immunity appeal under any reasonable reading of **Johnson**.

28

If Cantu has wholly failed to state a claim for intentional infliction of emotional distress, Ethridge is necessarily entitled to official immunity under state law, and the court need not decide the second question under Texas official immunity law -- whether he, as a government official, is "entitled to immunity from suit arising from performance of [his] (1) discretionary duties in (2) good faith as long as [he was] (3) acting within the scope of [his] authority." **City of Lancaster**, 883 S.W.2d at 653.

It is clear to us that Cantu's allegations against Ethridge do not amount to a tort under Texas law, and, consequently, we hold that, as a matter of law, Ethridge is entitled to qualified immunity. To prevail on a claim of intentional infliction of emotional distress under Texas law, the plaintiff must establish the following four elements: (1) that the defendant acted intentionally or recklessly; (2) that the conduct was `extreme and outrageous'; (3) that the actions of the defendant caused the plaintiff emotional distress; and (4) that the emotional distress suffered by the plaintiff was severe. **Dean v. Ford Motor Credit Co.**, 885 F.2d 300, 306 (quoting **Tidelands Auto. Club v. Walters**, 699 S.W.2d 939 (Tex.App.--Beaumont 1985, writ ref'd n.r.e.)).

> Liability [for outrageous conduct] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community . . . . Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous."

29

**Dean**, 885 F.2d at 306 (citing Restatement (Second) Torts § 46, Comment d (1965)).

Cantu's proffered evidence is that Ethridge embarked on a course of conduct intended to intimidate her, which included the following acts: (1) following her in the hallways; (2) obstructing her passage from a water fountain; (3) showing up in a classroom and positioning himself where Cantu usually sat so that she could not avoid encountering him and (4) repeatedly going in and out of a room where she was taking a make-up exam, which affected her performance. Assuming its veracity, and that the jury fully believed every word of it, this evidence simply could not, as a matter of law, be construed by reasonable jurors as proof of conduct that is "beyond all possible bounds of decency, . . . atrocious, and utterly intolerable in a civilized community . . . ." We therefore hold that Ethridge was entitled to state official immunity from Cantu's state law claim of intentional infliction of emotional distress claim.

## CONCLUSION

Defendants Rocha and Salazar are entitled to qualified immunity from Cantu's federal law claims because Cantu failed to alleged violation of a clearly established federal right. Rocha is also entitled to qualified immunity from Cantu's state law claims for invasion of privacy and defamation because Rocha acted in good faith and within the scope of his authority, as defined by the Texas Supreme Court in **City of Lancaster**. Ethridge is also entitled to qualified immunity from Cantu's state law claim of

30

intentional infliction of emotional distress, because Cantu has failed to state a cognizable claim. We lack appellate jurisdiction to consider Rocha, Salazar and Ethridge's appeal from denial of summary judgment on grounds other than qualified immunity (appeal number 94-60577).

Accordingly, the appeal under case number 94-60577, and defendant Ethridge's appeal from the denial of summary judgment, is DISMISSED. The district court's order in 94-60380 is REVERSED and judgment is RENDERED in favor of defendants Rocha, Salazar and Ethridge, dismissing the complaint against them on grounds that each of them is entitled to qualified immunity from suit on § 1983 claims and on the state law claims for invasion of privacy, defamation, and intentional infliction of emotional distress.