DAVIS, Circuit Judge:
Trooper Bryan Barnhart appeals the denial of his motion for summary judgment based on qualified immunity. Because Barnhart’s use of deadly force to defend himself and others from plaintiff Lorenzo Colston was objectively reasonable, we conclude that the district court erred in denying summary judgment on grounds of qualified immunity. Accordingly, we reverse and render.
I.
On September 29, 1993, at approximately 9:30 p.m., Texas State Policeman Bryan Barnhart was driving on a dark, isolated part of U.S. 175 in Henderson County, Texas. Around that time, Trooper Barnhart directed Marcus Fields to the shoulder of the road because Fields’ automobile had a defective headlight. Appellee Colston was a passenger in Fields’ car. Barnhart learned during a routine license check that Fields had an outstanding traffic warrant and placed him under arrest. Fields informed Barnhart that his wrists hurt because of recent surgery. As a result, Barnhart did not use handcuffs to secure Fields’ arms behind his body; instead, he used a flex cuff to secure Fields’ hands in front of his body. Barnhart decided that he would release Fields’ car to Colston if he had a driver’s license and could safely drive the vehicle. Barnhart asked Fields if Colston had a driver’s license. Fields said that he did.
Barnhart then approached the passenger side of Fields’ car and asked Colston to step out so he could see his driver’s license. As he stepped out of the car, Colston told Barn-hart that he did not have a license and that he did not drive. Colston was approximately 6T” and weighed 225 pounds; Barnhart was about 5’6” and weighed 160 pounds.
Around the time that Barnhart began talking to Colston, Henderson County Deputy Sheriff Jim Langford arrived at the scene, but stood near Barnhart’s patrol car and did not immediately approach Barnhart and Col-ston.
Barnhart proceeded to question Colston. He first asked Colston how old he was, and Colston replied that he was 18 years old.[1] Barnhart asked Colston if he had ever driven before; Colston stated that he had not. After retrieving his clipboard from his car, Barnhart asked Colston to spell his last name; Colston complied. Barnhart then asked Colston for his first name. Colston stated that it was “Sylvester,” which he was unable to spell. After two failed attempts at spelling “Sylvester,” Colston told Barnhart his name was Leo. Barnhart asked Colston what his name was three more times; Col-ston stated it was Leo. Barnhart then asked Colston what his middle name was, and he replied that he did not have one.
Barnhart walked over to Fields and asked him what Colston’s name was; Fields answered that it was Leo. Barnhart asked *98 Fields about the name Sylvester. Fields stated that he thought it was Colston’s middle name.
Barnhart returned to Colston and again asked him what his middle name was. Col-ston again said that he did not have a middle name. Barnhart placed his clipboard on Field’s car, and asked Colston whether he was carrying any weapons. Colston responded that he was not.[2]
Barnhart asked Colston to turn and face the other direction, Colston took two steps back but did not turn around. Barnhart ordered Colston to get down on his knees; Colston turned and placed his hands above his head, but did not get on his knees. Barn-hart repeated the order. As Colston went to his knees, Barnhart pulled his baton. Once Colston was on his knees, Barnhart told Col-ston to remain still and cross his feet, and Colston complied. Colston asked Barnhart, “why y’all treating me like this?” Barnhart replied that it was because Colston would not tell him who he was. Colston then informed Barnhart that his name was Lorenzo Colston and that he did have a driver’s license in his wallet. Colston then turned his head and looked at Barnhart.
Barnhart ordered Colston to look straight ahead and to get to the ground. Colston got on all fours, but then lifted one leg up.[3] Langford, who had walked over to Barn-hart’s side moments earlier, also ordered Colston to get on the ground. Colston told the officers he would not get on the ground and began to stand up. Both officers pushed Colston in an attempt to prevent him from standing up. As they were doing this, Barn-hart and Langford repeatedly ordered Col-ston to get down. Colston resisted their efforts and forced his way to his feet. Barn-hart began striking Colston with his baton, and Langford tried to grab Colston. Colston violently resisted and knocked Langford to the ground with a single hard blow. With Langford down, Barnhart struggled to control Colston; Colston struck Barnhart in the face and knocked him to the ground. The blow broke Barnhart’s glasses and dazed him. Langford regained his feet and charged Colston. Colston knocked him to the ground next to Barnhart, leaving him limp and motionless.
From his prone position, Barnhart drew his gun. Barnhart aimed at Colston, who was standing between him and Langford, and fired a shot that missed. Colston turned, stepped over Barnhart’s outstretched legs, and took about two steps away from Barn-hart directly toward Barnhart’s patrol car, where Barnhart’s shotgun was located. At this moment Barnhart fired twice, hitting Colston in the back of his right arm and in his buttocks.
A video recorder mounted on Barnhart’s patrol unit was operating from the time Barnhart stopped his vehicle. The incident described above was captured on videotape, which is part of the record.
Colston filed a 42 U.S.C. § 1983 action alleging, inter alia, that Barnhart violated his Fourth Amendment rights by using excessive force against him. Barnhart moved for summary judgment on the ground of qualified immunity. The district court denied Barnhart’s motion for summary judgment after concluding that material issues of fact were presented which precluded summary judgment.
II.
A.
We have jurisdiction to hear appeals from district court orders denying summary judgment on the basis of qualified immunity when the appeal is based on an issue of law. Cantu v. Rocha, 77 F.3d 795, 802 (5th Cir.1996). The district court’s determination that fact issues were presented that precluded summary judgment does not necessarily deny us jurisdiction over this appeal. Coleman v. HISD, 113 F.3d 528, 531 (5th Cir.1997). We can determine as a matter of law whether Barnhart is entitled to qualified immunity after accepting all of Colston’s factual *99 allegations as true. See Cantu, 77 F.3d at 802-3. We therefore have interlocutory jurisdiction to determine the legal issue of whether Barnhart’s conduct was objectively reasonable. Id. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); Nerren v. Livingston Police Dep’t, 86 F.3d 469, 472 (5th Cir.1996).
B.
We review de novo the district court’s order denying summary judgment on grounds of qualified immunity. Nerren, 86 F.3d at 471.
Qualified immunity shields government officials performing discretionary functions from civil damage liability if their actions were objectively reasonable in light of clearly established law. Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir.), cert. denied, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992). The evaluation of a qualified immunity claim involves a two-step inquiry. Harper v. Harris County, 21 F.3d 597, 600 (5th Cir.1994). The first step is to determine whether the plaintiff has alleged a violation of a clearly established constitutional right. Id. There is no dispute that Colston has met this burden; the use of excessive force to apprehend a subject implicates the Fourth Amendment’s guarantee against unreasonable seizures. See Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).
The second step requires the court to determine whether Barnhart’s conduct was objectively reasonable under existing clearly established law. Harper, 21 F.3d at 600. In Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), the Supreme Court explained that the reasonableness inquiry in an excessive force case is an objective one; evaluating the officer’s conduct under the Fourth Amendment we must balance the amount of force used against the need for that force with reference to clearly established law at the time of the conduct in question. Id. at 396, 109 S.Ct. at 1871-72; see also Spann v. Rainey, 987 F.2d 1110, 1115 (5th Cir.1993); Fraire, 957 F.2d at 1273.
The Supreme Court instructs that in determining the reasonableness of Barnhart’s conduct, we are not to employ “the 20/20 vision of hindsight,” Graham, 490 U.S. at 396, 109 S.Ct. at 1872, and that we must consider “the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.” Id. at 396-97, 109 S.Ct. at 1872.
We turn now to the issue of whether it was objectively reasonable for Barnhart to use deadly force, given the totality of the circumstances confronting him. Barnhart argues that it was objectively reasonable, under Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), for him to use deadly force because a reasonable officer in his circumstances would have believed that Colston posed a threat of serious bodily harm or death to himself or Langford. Colston maintains that it was not objectively reasonable for Barnhart to believe that Colston posed a danger to either officer at the time Colston was shot because he was unarmed and attempting to flee.
At the time Barnhart fired his weapon at Colston, the video tape and the remaining summary judgment evidence establish the following: Colston had not answered all of Barnhart’s questions honestly and he had disobeyed both Barnhart’s and Langford’s orders to get on the ground. Colston, who was much larger than Barnhart, had violently and forcefully resisted the officers’ attempts to gain control of him. Colston quickly subdued both officers and knocked them to the ground with some force. Barn-hart was dazed and his vision was blurred. Langford, who had a loaded weapon on him, was lying limp and motionless next to Barn-hart. Colston was on his feet near the officer’s outstretched legs. Barnhart’s earlier attempts to control Colston with non-deadly force, including hitting him with a baton, had failed. At the time Barnhart drew his weapon and fired the first shot, Colston was standing between Barnhart and Langford in *100 a position to inflict serious harm on the officers with or without a weapon. When Barn-hart fired the two shots that hit Colston, Colston had moved only two steps from Barnhart, toward Barnhart’s patrol car, where his shotgun was located.
Although Colston asserts that he was attempting to flee, Barnhart had no way to know whether Colston intended to flee or inflict further injury or death on the officers. We cannot say that a reasonable officer in Barnhart’s place would not have believed that Colston posed an immediate danger of serious bodily harm or death to Barnhart or Langford. As a result, Barnhart’s decision to use deadly force was objectively reasonable.
Colston argues that Barnhart’s failure to warn him before he discharged his weapon makes Barnhart’s conduct objectively unreasonable. We disagree. In Tennessee v. Garner, the Supreme Court held that an officer who determines that deadly force is necessary to protect himself or others should give a warning if it is “feasible.” Garner, 471 U.S. at 10, 105 S.Ct. at 1700-01. Barnhart, lying on his back with Colston nearby, had to immediately decide whether to shoot. In light of the totality of the circumstances facing Barnhart, Barnhart’s failure to give a warning was not objectively unreasonable.
III.
Because a reasonable officer in Barnhart’s position could have believed that he and Langford were in imminent danger of serious bodily harm or death at the hand of Colston, Barnhart was objectively reasonable in shooting Colston. Accordingly, the district court’s order denying Barnhart’s motion for summary judgment on grounds of qualified immunity is reversed and judgment is rendered granting that motion.
REVERSED and RENDERED.

. The record shows that Colston was 29 years old.

. Although Barnhart was unaware of their presence, a shotgun and a knife were later recovered from Fields' car.

. Colston states that he lifted his leg in preparation to run.